Bradley S. Keller, WSBA #10665
Ralph E. Cromwell, Jr., WSBA #11784
Jofrey M. McWilliam, WSBA #28441
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000
Facsimile No.: (206) 622-2522

Attorneys for Perkins Coie LLP

The Honorable Stanley A. Bastian

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUN DAM, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>PERKINS COIE, LLP, a Washington limited liability partnership; PERKINS COIE I, P.C., a Washington corporation registered in California; PERKINS COIE CALIFORNIA, P.C., a California corporation; PERKINS COIE CALIFORNIA II, P.C., a California corporation, and LOWELL NESS, individually,<br><br>                              Defendants. | No. 2:20-CV-00464<br><br>**CLASS ACTION**<br><br>**PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY**<br><br>**OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY**<br><br>**08/02/2021**<br>**WITHOUT ORAL ARGUMENT** |

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 1

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## I.   **INTRODUCTION AND RELIEF REQUESTED**

Perkins Coie LLP and Lowell Ness (collectively "Perkins") move the Court to compel arbitration of this matter pursuant to the express terms of the WTT Token Purchase Agreements that govern the transactions complained of by plaintiff.[1]  If the Court orders arbitration as required under the Token Purchase Agreements, the matter should be stayed pending completion of arbitration.

In the alternative, if the Court concludes that fact issues exist regarding the existence and scope of the agreement to arbitrate, the Court should then permit limited discovery on that issue.  In this regard, although Perkins provided "lay down" disclosures of the documents in its possession, plaintiff has not reciprocated and appears to be taking the position that the contracts by which plaintiff purchased the Tokens at issue are not relevant to whether this dispute must be submitted to arbitration.  Plaintiff's position is incorrect.  The evidence shows that purchasers, such as plaintiff, were required to "Accept" the terms of a Token Purchase Agreement,

---

[1] A similar Motion by Perkins in the related adversary proceeding, *Waldron v. Perkins Coie, LLC, et. at.,* Adv. Case No. 20-80031, was recently denied by Judge Corbit. Perkins has appealed Judge Corbit's ruling to this Court, and it is now pending briefing on appeal to this Court in Case No. 2:21-cv-00159-SAB.  As will be briefed on appeal to this Court, Perkins believes Judge Corbit's ruling was erroneous on numerous grounds.

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 2

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

which included express provisions requiring arbitration. Declaration of Ralph Cromwell, Ex. 1 at 2; Ex. 2 ¶ 8(a) & (e); Ex. 3 ¶ 15. The Token Purchase Agreement also included an express integration clause stating that the agreement included all of the terms and conditions of the Token purchase and there were no other terms. *See id.*, Ex. 2 ¶ 8(b). It is also undisputed that other purchasers who fall within the alleged purchaser class likewise executed Token Purchase Agreements that included express arbitration provisions and an integration clause. *Id.* Ex. 3 ¶¶ 15, 16(a).

Plaintiff has produced no separate escrow agreement with Perkins and there is none. Instead, plaintiff relies exclusively on a so-called marketing "White Paper" in an attempt to avoid the written, integrated terms set forth in the applicable Token Purchase Agreements. *See* Compl. ¶ 19 (ECF 1). However, the "White Paper" that plaintiff relies on is not itself a contract, expressly states that it creates no contractual rights or obligations, was not signed or entered into by any party, and is not the Agreement by which Tokens were sold or purchased. *See* Cromwell Decl., Ex. 4. Rather, the purchasers of WTT Tokens entered into express, written WTT Token Purchase Agreements with the seller of the Tokens, Giga Watt Pte. Ltd. ("GW Singapore"). The WTT Token Purchase Agreements control the purchase and sale of the Tokens, and those integrated Agreements include express arbitration provisions that encompass plaintiff's claims against Perkins. *See* Cromwell Decl. Ex. 2 ¶ 8(a) & (b); Ex. 3 ¶ 15.

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 3

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Moreover, the marketing "White Paper" referred to in plaintiff's Complaint was incorporated by reference into the Token Purchase Agreements between GW Singapore and each Token purchaser. *Id*. Ex. 2 ¶ 5; Ex. 3 ¶ 6. Thus, to the extent the "White Paper" informed any "escrow" arrangement, it did so only by incorporation into the WTT Token Purchase Agreements – which in turn include express arbitration provisions. To the extent Perkins was "aware" of any alleged escrow provisions, or implicitly agreed to any such provisions, at most it can only be bound to those terms of which it was aware and which were finally agreed upon by the seller and the purchaser in the WTT Token Purchase Agreements. Those Agreements include express arbitration provisions and integration clauses that encompass plaintiff's claims.

The agreement to arbitrate in this case is governed by the Federal Arbitration Act, 9 U.S.C. § 206, because it involves international commerce—specifically the sale of digital Tokens by a Singapore entity (Giga Watt Pte. Ltd.) to purchasers from around the world, for the purpose of "mining" cryptocurrencies on the world-wide web. The United States Supreme Court has made clear that the strong policy favoring arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). In particular, the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 4

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

In short, under the plaintiff's theory, if Perkins is to be bound by the terms under which Tokens were sold and purchased, then all of the terms of purchase apply. Plaintiff cannot selectively choose which terms of the Token Purchase Agreements he will enforce and cannot plead the final written terms by which Tokens were purchased out of existence. Plaintiff (and all class members, if any) is thus bound by all of the terms of purchase under the Token Purchase Agreements, including that all disputes "arising from or relating to" the purchase of Tokens under the Agreement be submitted to binding arbitration. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, ___ U.S. ___, 140 S. Ct. 1637, 1644 (2020). Accordingly, this Court should compel arbitration under federal law and stay the case in the interim.

In the alternative, the Court should order discovery limited to the existence and terms of any other or different Token Purchase Agreements allegedly entered into by plaintiff, including the existence of escrow and/or arbitration provisions in any such agreements. Specifically, when a party has moved to compel arbitration and stay, but the court concludes that the existence and scope of an applicable agreement to arbitrate is "in issue," the court must permit "discovery and a full trial in connection with the motion to compel arbitration," and in so doing "may consider only issues relating to the making and performance of the agreement to arbitrate." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir.1999); 9 U.S.C. § 4. Accordingly, if the Court concludes that fact questions exist regarding the existence and scope of an applicable

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

agreement to arbitrate, then the Court must permit limited discovery on those issues only, and potentially a jury trial, until the issue of arbitrability has been finally resolved. *See id*.

## II.   **BACKGROUND**

### A.   **Overview**

Plaintiff claims that Perkins acted as an escrow agent with regard to proceeds from the sale of digital cryptocurrency mining "Tokens." The Tokens were sold by a Singapore company, Giga Watt Pte. Ltd ("GW Singapore"). The purchasers were individuals and entities from around the world. Cryptonymos Pte. Ltd. provided the marketing "platform" and conducted the Token sale. Each Token entitled the purchaser to place one watt of crypto-mining capacity in Giga Watt, Inc.'s ("GW Wenatchee") facilities in Wenatchee for up to 50 years. The sale took place between May 19, 2017, through July 31, 2017, and raised approximately $22.4 million.

### B.   **The "White Paper" and WTT Token Purchase Agreement.**

As an informational tool to aid marketing efforts, Cryptonymos distributed a so-called "White Paper" that described cryptocurrency mining generally, the Giga Watt project, Token launch details, a projected timeline, the "team" involved, and the "Risk Factors" of participation. *See* Compl. ¶ 19; Cromwell Decl., Ex. 4. Apparently there were numerous versions of the White Paper—both an English version, as well as those translated in multiple foreign languages.

One version of the White Paper includes statements such as: "New batches of Tokens will be issued in step with the construction of new units"; "Cryptonymos will

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 6

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

issue and distribute its initial batch of WTT Tokens, with subsequent batch issues to follow upon the completion of new capacity construction"; "All funds collected through the pre-sale and Token Launch will be deposited in escrow"; "The funds will be released from escrow in step with the completion of facilities"; if the Token sale is over-subscribed, the "over-subscribed proceeds will be placed into escrow until the requisite processing center capacity has been built-out." Cromwell Decl., Ex. 4 at 15-20.

Importantly, the first page of the White Paper includes a prominent "Legal Disclaimer" that, among other things, states that it "does not imply any elements of a contractual relationship" and its "sole purpose" is to provide "reasonable information" to allow interested purchasers "to undertake a thorough analysis of the company." *Id*. at 3. In addition, the White Paper was not itself entered into or executed by anyone. Rather, the purchase of Tokens was accomplished through a purchase agreement titled "WTT Token Purchase Agreement" that was entered into between "Giga Watt Pte. Ltd., a Singapore company (the 'Company'), the issuer of the WTT Tokens," and each purchaser. *See, e.g.*, Cromwell Decl. Exs 1, 2, 3.

To access the Token Purchase Agreement, the purchaser had to go online, insert into the Agreement the number of Tokens they wished to purchase, and click on a button that said "Accept." This was explained to Perkins in a May 17, 2017, email whereby defendant Lowell Ness, a partner at Perkins, was asked to review the Token Purchase Agreement:

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Lowell, attached is the final version of the White Paper and a Token Purchase Agreement that would be incorporated into the web-site, so every purchaser would click "Accept" button before making payment.

*See* Cromwell Decl., Ex. 1.

The Token Purchase Agreement attached to the May 17 email contained not only a general statement incorporating the terms of the White Paper, but also an actual, explicit escrow provision. This provision stated that Perkins Coie would act as an Escrow Agent to hold the proceeds of Token sales, but it also said that the trigger for the release of funds would be the issuance of Tokens to the purchasers:

> 3. <u>Escrow</u>. Funds collected from the Purchaser will be deposited to the escrow account held in Trust by Perkins Coie <u>until the WTT Tokens are issued to the Purchaser</u>. All funds paid in BTC or ETH will be converted to U.S. dollars based on the exchange rate at any time of conversion with 24 hours from the time of purchase.

*See id.* ¶ 3 (emphasis added).

Defining the release of Tokens as the trigger authorizing the release of funds from escrow is a problem for the plaintiff because it appears that Tokens were, in fact, issued to all purchasers. For example, through counsel, GW Wenatchee represents in a letter to the SEC that it sold 20,997,260 Tokens and, that by February 28, 2018, it had issued 23,178,000 Tokens. *See* Cromwell Decl., Ex. 5 at 12-13. Accordingly, under the escrow provision provided to Ness, Perkins would have substantially complied with any alleged duties as an Escrow Agent by disbursing sales proceeds as Tokens were issued, and this would be true even if hosting capacity sufficient for all purchasers was not yet available. If, as plaintiff Jun Dam alleges, Perkins implicitly

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

agreed to act as an escrow agent to facilitate Token purchase transactions, then presumably Perkins would have been "agreeing" only to those terms contained in the final WTT Token Purchase Agreement that was sent to it.

Critical to this motion, the Token Purchase Agreement emailed to Ness also provides, in writing, that the parties "submit and consent to the exclusive jurisdiction of the [sic] Singapore"[2] with regard to any litigation "that may arise directly or indirectly from [the Token Purchase] Agreement." *See* Cromwell Decl., Ex. 2 ¶ 8(a). The paragraph also contains a straightforward arbitration clause providing that "[a]ny dispute arising out of or in connection with this contract" shall be arbitrated in Singapore by the Singapore International Arbitration Centre, before a panel of three arbitrators, in English. *Id.*

Plaintiff Jun Dam has not provided the agreements by which he allegedly purchased Tokens. It is clear, however, that the WTT Token Purchase Agreements that were signed by purchasers, while differing somewhat from the version sent to Perkins, included even more specific, detailed and prominent arbitration provisions. For example, the Token Purchase Agreement executed by purported class member Scott Glasscock, and filed at ECF No. 548 in the related bankruptcy proceeding of GW Wenatchee, starts at the top, in all capital letters, with a statement emphasizing

_____

[2] As noted above, both Cryptonomos and Giga Watt Pte. Ltd. were organized in Singapore.

Byrnes ◆ Keller ◆ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

that the Agreement contains a binding arbitration clause and a waiver of the right to bring representative or class actions:

WTT TOKEN PURCHASE AGREEMENT

> PLEASE READ THIS WTT TOKEN PURCHASE AGREEMENT CAREFULLY.  NOTE THAT SECTION 15 CONTAINS A BINDING ARBITRATION CLAUSE AND REPRESENTATIVE ACTION WAIVER, WHICH AFFECT YOUR LEGAL RIGHTS.  IF YOU DO NOT AGREE TO THE TERMS OF THIS WTT TOKEN PURCHASE AGREEMENT, DO NOT PURCHASE TOKENS.

*See* Cromwell Decl., Ex. 3.  The arbitration clause referenced is then found in paragraphs 15(a), (c), and (d).  *Id.*  Like the version of the Token Purchase Agreement sent to Ness on May 17, paragraph 15(d) of the Glasscock Agreement provides for arbitration in Singapore before the Singapore International Arbitration Centre.  *Id.*

Thus, and critically for purposes of this Motion, members of the proposed class entered into WTT Purchase Agreements that both incorporated the White Paper (and thus any alleged "escrow" provision in it), and expressly and prominently provided for arbitration of all claims arising out of or relating to the Agreement.  Likewise, the Token Purchase Agreements entered into by purchasers included integration clauses that preclude any other, or separate, implied terms.  *See* Cromwell Decl., Ex. 2 ¶ 8(b); Ex. 3 ¶ 16(a).

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

### III.   ARGUMENT

**A.   Under the Terms of the Token Purchase Agreements, This Dispute Must Be Referred to Arbitration.**

    **1.   The FAA Controls and Imposes a Strong Policy in Favor of Arbitration.**

Because the Token Purchase Agreements involve both foreign and U.S. parties, and call for arbitration in Singapore, they are international arbitration agreements. International arbitration agreements involving parties in the United States are governed by Chapter 2 of the Federal Arbitration Act ("FAA"), which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the so-called "New York Convention" or "Convention"). *See* 9 U.S.C. §§ 201- 208. Under the terms of the Convention, as codified in the FAA, a district court must compel arbitration in a foreign location if the terms of arbitration so state, and if the arbitration agreement is governed by the Convention. *See* 9 U.S.C. § 206.

Arbitration agreements governed by the Convention are also governed by Chapter 1 of the FAA to the extent that the FAA and the Convention are not in conflict. 9 U.S.C. § 208. Here, therefore, both Chapter 1 and Chapter 2 of the FAA apply.

The FAA espouses a strong policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *see also Hall St. Assocs. v. Mattel, Inc.,* 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce agreements to arbitrate. *Hall St. Assocs.,* 552 U.S. at 582. Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

itself ... in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 476 (1989). The strong federal policy favoring enforcement of arbitration agreements "applies with special force in the field of international commerce." *Mitsubishi Motors,* 473 U.S. at 631. *Accord, e.g., Simula*, 175 F.3d at 720.

Pursuant to the FAA, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §§ 2, 206. By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218.

### 2. All of the Elements Requiring Referral to Arbitration Are Met.

Under the Convention, as codified in the FAA, the District Court must conduct a "very limited inquiry" in determining whether to enforce an international agreement to arbitrate. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002)). A court may not review the merits of the dispute but must limit its inquiry to determining whether the four elements that require arbitration under the Convention are met. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C10-5458 SI, 2011 WL 5325589 at * 2 (N.D. Cal. Sept. 19, 2011). In determining whether arbitration must be compelled under the Convention, the court reviews only the following four elements:

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 12

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009) (quoting *Bautista*, 396 F.3d at 1294 n.7). *See also* 9 U.S.C. § 202. If these questions are answered in the affirmative, the "Convention requires that courts must enforce an agreement to arbitrate unless the agreement is 'null and void', inoperative or incapable of being performed." *Id*. at 654 . "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Here, all of the elements of the Convention are met. Therefore, this Court "must enforce" the agreements and compel arbitration. *Balen*, 583 F.3d at 654.

### a. The Agreement to Arbitrate Is in Writing.

Perkins is not a signatory to the written arbitration provision contained in the Token Purchase Agreements. However, in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009), the Supreme Court considered whether Chapter 1 of the FAA prohibited "those who are not parties to a written arbitration agreement" from invoking the FAA's provisions under contract law principles entitling a nonsignatory to enforce such agreements. *Id.* at 629. The Supreme Court then held that Chapter 1's provisions concerning the validity and enforcement of arbitration agreements did not "alter background principles of state contract law regarding the scope of agreements

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 13

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

(including the question of who is bound by them)." *Id.* at 630. Accordingly, the Supreme Court held that "a litigant who was not a party to the relevant arbitration agreement" may nevertheless invoke the FAA's provisions if the relevant contract law allows him to enforce the agreement through doctrines such as "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id.* at 631, 632.

In *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA LLC*, ___ U.S. ___, 140 S. Ct. 1637, 1644 (2020), the United States Supreme Court resolved whether a nonsignatory to an international arbitration agreement may enforce an arbitration agreement under the Convention, using the doctrine of equitable estoppel, notwithstanding the Convention's requirement that there be an "agreement in writing." In a unanimous decision, the United States Supreme Court held that the Convention—as implemented in the United States via Chapter 2 of the FAA, 9 U.S.C. § 201, *et seq.*—permits nonsignatories to international arbitration agreements to compel arbitration based on domestic-law equitable estoppel doctrines. 140 S. Ct. at 1645.

Here, Perkins is entitled to enforce the arbitration provision in the Token Purchase Agreements under the doctrine of equitable estoppel, which "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that [the] contract imposes." *Comer v. Micor, Inc.* 436 F.3d 1098, 1101 (9th Cir. 2006). Under that doctrine, where "a signatory to the written

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 14

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory," the signatory is estopped from "cherry-pick[ing] beneficial contract terms while ignoring other provisions that do not benefit it or that it would prefer not to be governed by such as an arbitration clause." 21 Richard A. Lord, Williston on Contracts § 57:19, at 200, 202 (4th ed. 2017). In short, plaintiff may not selectively assert the escrow terms of the Token Purchase Agreements against Perkins to its benefit, while at the same time disavowing, and attempting to avoid, its arbitration provisions. Accordingly, the plaintiff is bound to arbitrate his claims against Perkins.

In addition, and alternatively, Perkins may enforce the arbitration terms of the Token Purchase Agreements as a nonsignatory under ordinary principles of agency. *See Comer*, 436 F.3d at 1101. Here, as the alleged "escrow" agent in the transaction, under the plaintiff's theory of liability, Perkins was acting as the agent of both GW Singapore and the Token purchasers with respect to performance under the Agreements and, specifically, the terms under which proceeds of sale would be disbursed. *See Radach v. Prior*, 297 P.2d 605 (Wash. 1956) (escrow is agent of both parties to the transaction and, upon performance of conditions, agent of one or the other). In this regard, Perkins was acting on the instructions of its alleged principal, GW Singapore, in the disbursement of sale proceeds. The plaintiff's allegation is that the instruction was improper, and that Perkins breached the escrow terms that were alleged incorporated into the Agreements. Where, as here, the claim is against a nonsignatory agent of the principals who signed the arbitration agreement, and the

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 15

Byrnes ◆ Keller ◆ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

claims arise out of the performance of the agreements, the nonsignatory agent may enforce the agreement. *See Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986) (nonsignatory agents (employees) of securities broker entitled to enforce arbitration agreement arising from their alleged wrongdoing in performing under brokerage account contract). *Accord, e.g., Amisil Holdings, Ltd. v. Clarion Capital Mgmt.,* 622 F. Supp. 2d 825, 840-41 (N.D. Cal 2007) (nonsignatories, as agents of signatory, may enforce agreement to arbitrate, where alleged wrongful conduct of nonsignatories relates to performance of agreement and claims are "intertwined" with agreement).

For all of these reasons, an enforceable arbitration agreement in writing exists, and the first element for compelling arbitration under the Convention is satisfied.

### b. Singapore Is a Member Nation of the Convention

The second element is met because arbitration is required to take place in Singapore, and Singapore is a signatory, member nation of the Convention. *See* http://www.newyorkconvention.org/countries (listing member nations).

### c. The Transaction Involves Commerce

The third element is met because the agreement to arbitrate relates to a transaction that involves commerce. Specifically, Token purchasers from around the world purchased Tokens from an entity in Singapore for the purpose of obtaining up to 50 years of power capacity in Wenatchee that would allow them to engage in cryptocurrency "mining" on the internet (which includes mining on servers located

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 16

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

around the world). The transaction is commercial in nature. The third element for application of the Convention is present.

### d. There Is a Reasonable Relation to Singapore

The fourth element is met because a party to the transaction is not a citizen of the United States, and there is a reasonable relation to Singapore. As noted in the Complaint, both the seller of the Tokens, GW Singapore, and the marketer of the Tokens, Cryptonomos, were incorporated in Singapore. *See* Compl. ¶¶ 17, 22; Cromwell Decl., Ex. 7. The purchasers (and proposed class) include hundreds of individuals from around the world. Accordingly, the transaction involved non-U.S. parties and has a reasonable relationship to arbitration in Singapore. The fourth and final element for application of the Convention is also met.

In short, because all four elements of the Convention are met, this Court "must enforce" the agreements and compel arbitration. *Balen*, 583 F.3d at 654.

## B. A Stay Should Be Entered Pending Completion of Arbitration.

Under 9 U.S.C. § 3, courts are required to stay proceedings pending completion of arbitration. Accordingly, a stay of this matter must be entered pending completion of arbitration.

## C. If the Existence or Scope of Applicable Agreements to Arbitrate Are "In Issue" the Court Must Then Permit Limited Discovery (and Potentially a Jury Trial) on the Issue of Arbitrability.

Plaintiff apparently intends to argue that the terms of any agreement to hold funds in "escrow" are separate and apart from the Token Purchase Agreements, and that under this supposed separate escrow agreement there was no agreement to

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

arbitrate. In this regard, plaintiff carefully avoids alleging the terms under which plaintiff (or any other alleged class members) purchased the Tokens at issue. Instead, plaintiff relies on the terms of the marketing "White Paper" as somehow evidencing an "escrow" agreement separate from the Token Purchase Agreement, and which does not contain an arbitration clause. *See* Compl. ¶ 19 (alleging that the "White Paper" described the terms and conditions of the Token offering).

Plaintiff's position is without basis on multiple grounds. First, as noted above, the White Paper itself expressly and unambiguously states that it does not create or imply any contractual relationship. Cromwell Decl., Ex. 4 at 3. Moreover, not a single party – not the seller, not the purchasers, and not Perkins – entered into the White Paper. By its terms it was an informational, marketing piece only.

In contrast, both the seller, GW Singapore, and the purchasers, entered into Token Purchase Agreements that governed the terms and conditions of the transaction. *Id.*, Exs 1, 2, 3. The Token Purchase Agreements incorporated the White Paper in part by reference, included an express arbitration clause, and contained an express integration clause stating the terms of the Token Purchase Agreements constituted the complete terms of purchase, and that there were no other terms. *Id.*, Ex. 2 ¶ 8(b); Ex. 3 ¶ 16(a). Thus, the terms of payment and any "escrow" existed only in and as a part of the Token Purchase Agreements. There is no basis to claim that the White Paper gave rise to a separate agreement independent of the Token Purchase Agreements themselves.

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 18

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Moreover, and regardless of whether any alleged "escrow" independent of the Token Purchase Agreements existed, the arbitration provisions of the Token Purchase Agreements in any event encompass the claims at issue and therefore require arbitration. Specifically, the agreement to arbitrate encompasses all disputes "arising out of or in connection with this contract" whether "directly or indirectly." Cromwell Decl., Ex. 2 ¶ 8(a). *See also* Ex. 3 ¶ 15(a) (all disputes "arising from or related to" the agreement). Ninth Circuit authority requires such language to be construed broadly, and has found that it encompasses all claims of any nature, including contract, tort and statutory, and embraces every dispute, regardless of the label, "having a significant relationship to the contract." *Simula*, 175 F.3d at 721. Under this standard, the factual allegations need only "touch matters" covered by the contract "and all doubts are to be resolved in favor of arbitrability." *Id*. Clearly, the terms by which payment for the purchase of Tokens is made and disbursed (and potentially refunded) "touches matters" covered by the contract that governs the purchase transaction– i.e., the Token Purchase Agreement. It is impossible and illogical to argue that the terms of payment do not touch matters covered by the purchase contract itself. The alleged escrow deals with payment, and payment is a necessary element of the contract. Thus, the arbitration clause here encompasses any alleged "escrow."

"The standard for demonstrating arbitrability is not high." *Simula*, 175 F.3d at 719. Moreover, as the party opposing arbitration, it is plaintiff's burden to prove that the claim is not subject to arbitration. *See Green Tree Fin. Corp.*, 531 U.S. at 91

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 19

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

(party resisting arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration"). Here, plaintiff has not and cannot meet that burden, particularly because all doubts must be construed in favor of arbitration. However, in the event this Court concludes that the existence and/or scope of the agreement to arbitrate is "in issue," then the court must permit discovery – and potentially a jury trial – on the issue of arbitrability. *Simula,* 175 F.3d at 726.

Specifically, the FAA provides for "discovery and a full trial in connection with a motion to compel arbitration" if the court concludes arbitrability is "in issue." *Id.* *See also* 9 U.S.C § 4 (same). In this regard, some courts have adopted a summary judgment-like standard, holding that if questions of fact exist regarding the existence and scope of an agreement to arbitrate, then discovery limited to that issue – and potentially a jury trial – must be allowed. *See, e.g., Guidotti v. Legal Helpers Debt Resolution, L.L.C.* 716 F.3d 764, 780 (3d Cir. 2013) ("[T]he District Court should not have denied Appellants' motion to compel arbitration without first allowing limited discovery and then entertaining their motion under a summary judgment standard," and holding that if after discovery genuine fact issues remained, the court should have submitted the issue of arbitrability to a jury.).

Accordingly, if the Court concludes that fact questions exist regarding the existence and scope of an applicable agreement to arbitrate, then the Court must permit limited discovery on those issues only, and potentially a jury trial, until the issue of arbitrability has been finally resolved. *See id., Simula,* 175 F.3d at 726; 9

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 20

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

U.S.C. § 4. Until the issue of arbitrability is resolved, no other discovery may proceed. *Simula*, 175 F.3d at 726 (pending decision on motion to compel arbitration and stay, "federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

## IV.  CONCLUSION

Based on the express terms of the Token Purchase Agreements, the Court should compel arbitration and stay this matter. In the alternative, the Court should order discovery limited to the existence and scope of the applicable agreements to arbitrate, including all Agreements pursuant to which plaintiff purchased Tokens.

DATED this 11th day of June, 2021.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
    Bradley S. Keller, WSBA #10665
By /s/ Ralph E. Cromwell, Jr.
    Ralph E. Cromwell, Jr., WSBA #11784
By /s/ Jofrey M. McWilliam
    Jofrey M. McWilliam, WSBA #28441
1000 Second Avenue, 38th Floor
Seattle, Washington  98104
206-622-2000
Fax:  206-622-2522
Email:  bkeller@byrneskeller.com
        rcromwell@byrneskeller.com
        jmcwilliam@byrneskeller.com

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND
STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY
REGARDING ARBITRABILITY- 21

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1      MUNDING, P.S.

2      By /s/ John Munding
3         John Munding, WSBA #21734
     9425 N. Nevada St. Suite 212
4      Spokane, Washington 99218
5      509-624-6464
     Fax: (509) 624-6155
6      Email: john@mundinglaw.com
7      *Attorneys for Perkins Coie LLP and Lowell Ness*

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

By /s/ Ralph E. Cromwell, Jr.

Ralph E. Cromwell, Jr.
*Attorneys for Plaintiffs*
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
206-622-2000
Fax: 206-622-2522
Email: rcromwell@byrneskeller.com

PERKINS' AND NESS' MOTION TO COMPEL ARBITRATION AND STAY OR IN THE ALTERNATIVE PERMIT LIMITED DISCOVERY REGARDING ARBITRABILITY- 23

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000