1  WESTERN WASHINGTON LAW GROUP PLLC
   DENNIS J. MCGLOTHIN (28177)
2  ROBERT J. CADRANELL (41773)
   P.O. Box 468
3  Snohomish, WA  98291
   Tel: 425/728-7296, ext. 4
4  dennis@westwalaw.com
   robert@westwalaw.com
5  docs@westwalaw.com

6  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (*pro hac vice*)
7  THOMAS J. O'REARDON II (*pro hac vice*)
   PAULA R. BROWN (254142)
8  501 West Broadway, Suite 1490
   San Diego, CA  92101
9  Tel: 619/338-1100
   619/338-1101 (fax)
10 tblood@bholaw.com
   toreardon@bholaw.com
11 pbrown@bholaw.com

   Attorneys for Plaintiffs

12              **UNITED STATES DISTRICT COURT**

13              **EASTERN DISTRICT OF WASHINGTON**

14 ERIC BLOMQUIST, individually          Case No: 2:20-cv-00464-SAB
   and on behalf of all others similarly
15 situated, and JUN DAM,                **CLASS ACTION**
   individually,
16                                        **MOTION FOR AND**
                Plaintiffs,               **MEMORANDUM IN SUPPORT OF**
17                                        **PRELIMINARY APPROVAL OF**
           v.                             **CLASS ACTION SETTLEMENT**
18
   PERKINS COIE LLP, a Washington         **DATE:** January  11, 2024
19 limited liability partnership;         **TIME:**  10:30 AM
   PERKINS COIE CALIFORNIA,               **JUDGE: Stanley A. Bastian**
20 P.C., a California corporation;        **COURTROOM:** By Video
   PERKINS COIE U.S., P.C.; and
21 LOWELL NESS, individually,             Chief Judge Stanley A. Bastian

22              Defendants.
                                          Complaint Filed:   December 16, 2020
23                                        Trial Date:        Not Yet Set

24                                        **JURY TRIAL DEMANDED**

25

26

BLOOD HURST & O' REARDON, LLP

## I.    INTRODUCTION

Plaintiff Eric Blomquist requests that the Court preliminarily approve a class settlement resolving all claims against Defendants[1] relating to Perkins Coie's wrongful disbursement of Class Members' money from a Token escrow account maintained by Perkins Coie.

The settlement will establish a non-reversionary fund of $4.5 million. The fund will be distributed to Class Members after payment of settlement administration costs and attorneys' fees. Class Members who submit valid claims will receive a cash payment reflecting their *pro rata* share of the fund based on the number of Tokens the Class Member purchased.

The settlement is a product of extensive, arm's-length, extremely contentious litigation and negotiations by which Perkins Coie seeks to resolve two separate actions pending against it. This class settlement will resolve all claims against Perkins Coie for its alleged harm to Class Members (Giga Watt Token holders) allegedly caused by Perkins Coie's improper release of Class Members' escrowed money. Separately, and pending in bankruptcy court, is a proposed settlement between Perkins Coie and the bankruptcy Trustee to settle the Trustee's claims against Perkins Coie for harm Perkins Coie allegedly caused to the bankrupt Giga Watt estate. Most of the money from the bankruptcy settlement will save the bankruptcy from administrative insolvency, leaving the class settlement as the primary source of recovery for the holders of the tokens at issue. The class and Trustee settlements are separate—Perkins Coie provides separate consideration for the settlements and the settlements have separate approval processes. However, neither settlement will take effect until both are

---

[1]    All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Settlement Agreement.

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 1

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

1  approved by their respective courts: the class settlement by this Court and the

2  Trustee settlement by the bankruptcy court.

3  The class settlement should be preliminarily approved and notice sent to

4  Class Members because the settlement delivers substantial cash benefits that

5  address the harm of Perkins Coie's wrongful disbursement of Class Members'

6  escrowed funds without additional litigation and its significant risks and cost.

7  The settlement is favorable and delivers a fair, adequate, and reasonable

8  resolution for the Class.

9  **II.    HISTORY OF LITIGATION AND SETTLEMENT**

10  **A.    Nature of the Litigation**

11  The class action commenced on December 16, 2020, when plaintiff, Jun

12  Dam, filed a class action complaint on behalf of all persons whose money was

13  improperly released from an escrow account maintained by Perkins Coie in

14  connection with the sale of Ethereum tokens ("Tokens"). Eric Blomquist was

15  added as a named plaintiff in the first amended complaint and is the proposed

16  Class representative: *Blomquist v. Perkins Coie LLP, et al.*, Case No. 2:20-cv-

17  00464-SAB, ¶¶ 17–20, 22–27. Jun Dam, remains a named plaintiff in the first

18  amended complaint but is not a proposed representative of the Class. All "¶"

19  references are to the first amended complaint.

20  The complaint alleges that Class Members purchased Tokens that

21  represented their right to access electricity and cryptocurrency mining facilities

22  that were to be built by Giga Watt, Inc. in Eastern Washington (the "Giga Watt

23  Project"). ¶ 24.

24  The Giga Watt Project was supposed to give Token holders the ability to

25  crypto-mine at a very favorable rate. Individuals and entities could prepurchase

26  Tokens that provided the right to access and use one watt of computing power

BLOOD HURST & O' REARDON, LLP

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 2

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

and the related infrastructure to mine for cryptocurrency at the to-be-constructed Giga Watt crypto-mine. ¶ 18. As the Giga Watt mine construction was completed and could provide electricity (to occur in stages), the pre-purchased Tokens were supposed to be issued in corresponding stages, giving Token holders access to a portion of their purchased electricity that corresponded with the portion of the mine that had been completed and was operational. ¶ 20. Once access to power was provided, Token holders could then mine for valuable cryptocurrency. ¶ 24.

The money Class Members paid to buy Tokens (about $22 million) was deposited into an escrow account maintained by Perkins Coie. ¶¶ 20–22. Tokens were marketed by promoting the reputation and experience of Perkins Coie as the escrow agent. ¶ 21. With Perkins Coie's knowledge and endorsement, the Giga Watt Project touted the reliability of Perkins Coie to Token purchasers so purchasers would know their Token purchase money would be safe in escrow, guarded by the reputable Perkins Coie, until the mine was built and electricity for mining the cryptocurrency was available. ¶ 22. Perkins Coie was charged with releasing Class Members' money from escrow in stages corresponding to construction of the Giga Watt Project. ¶ 20. However, instead of releasing Class Members' money in step with mine construction, Perkins Coie allegedly released all escrow funds to Giga Watt Inc. and/or GigaWatt Pte., Ltd. at a time when only 50% of the Giga Watt Project facilities were operational. ¶¶ 26–28. Plaintiff alleges Perkins Coie prematurely released from escrow about $10.8 million.

After completing only about one-half of the Giga Watt Project, Giga Watt, Inc. petitioned for bankruptcy. ¶¶ 25–27. Plaintiff alleges that Perkins Coie violated its fiduciary obligation, the escrow terms, and Washington consumer protection statutes, by releasing all of Class Members' money from escrow even though the mining facilities were only half built. ¶¶ 20, 26–27, 36–80. When the

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 3

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

Giga Watt Project collapsed, Class Members' money—the amount that should have been secure in escrow (about $10.8 million)—was gone. ¶¶ 25–28. This class action was filed seeking the return of the money Perkins Coie wrongly released from escrow. ¶ 1.

Based on these allegations, the complaint alleges five causes of action against Perkins Coie: (i) breach of fiduciary duty; (ii) breach of express or implied contract; (iii) breach of contract—third party beneficiaries; (iv) violation of Washington's Consumer Protection Act ("CPA"), RCW 19.86.020; and (v) violation of Washington's Escrow Agent Registration Act ("WERA"), RCW 18:44. ¶¶ 36–80.

### B.    Procedural History

Prior to this class action, the bankruptcy proceedings involving Giga Watt, Inc. were ongoing. The bankruptcy case began as a Chapter 11 reorganization in 2018. After almost two years of failed reorganization efforts and when the estate was close to insolvency, on September 30, 2020, the bankruptcy case was converted to a Chapter 7 liquidation. Blood Decl., ¶ 6.

Perkins Coie is not a debtor and was not otherwise involved in the Chapter 11 reorganization proceedings. However, shortly after the bankruptcy case was converted to Chapter 7 liquidation, the Trustee filed an adversary proceeding, No. 20-80031, against Perkins Coie and other parties, alleging that the Giga Watt estate had been damaged by Perkins Coie's premature release of Token holders' money from escrow, even though evidence showed Giga Watt Inc. received almost all the escrow funds. By this stage of the bankruptcy, the Trustee's claim against Perkins Coie was the primary asset of the estate. Blood Decl., ¶ 7.

After filing the adversary proceeding against Perkins Coie, and six months after the class action was filed in district court, the Trustee sought to shut down

BLOOD HURST & O' REARDON, LLP

1    the class action. The Trustee moved for an order to show cause as to why Jun

2    Dam should not be sanctioned for violating the automatic stay with his class

3    action against non-debtor Perkins Coie. Blood Decl., ¶ 8. Seeking sanctions

4    against Mr. Dam, the Trustee argued the class claims against Perkins Coie,

5    seeking refund of Token purchasers' wrongly released escrow funds, were claims

6    solely "owned" by the estate and hence subject to the automatic stay. In splitting

7    the claim, the bankruptcy court ruled that three of the five claims asserted in the

8    class action were subject to automatic bankruptcy stay. It suggested the Trustee

9    could file a motion for a preliminary injunction to enjoin litigation of the

10   remaining two class claims. The motion for preliminary injunction was filed by

11   the Trustee and granted by the bankruptcy court. Blood Decl., ¶ 8.

12   Jun Dam appealed both the automatic stay and injunction orders to this

13   district court. The appeals were consolidated and fully briefed on the merits.

14   When briefing was complete, on August 1, 2022, the district court stayed the

15   appeal so that the parties (the Class, Perkins Coie and the Trustee) could

16   participate in mediation and settlement discussions. Blood Decl., ¶ 9.

17   While the consolidated appeal was being briefed, the Trustee continued its

18   multi-pronged aggressive litigation to save the bankruptcy from administrative

19   insolvency. It moved to dismiss the appeal for lack of jurisdiction and again filed

20   a motion for sanctions against Jun Dam and also sought sanctions against his

21   attorneys, contending the appeals were frivolous. He also filed a motion in the

22   bankruptcy court seeking to modify the preliminary injunction staying the class

23   action. The Trustee wanted the injunction lifted so he could move to intervene in

24   the class action and then move to dismiss the class action as barred by the

25   Securities Litigation Uniform Standards Act (SLUSA). Plaintiff opposed the

26

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 5

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

1    motion to modify the stay, which was heard but not ruled upon. Blood Decl.,

2    ¶ 10.

3        At the same time, the Trustee was on appeal (first in the district court and

4    then in the Ninth Circuit) on an appeal filed by Perkins Coie regarding a motion

5    to compel arbitration. While that appeal was pending, the Trustee filed an

6    amended complaint against Perkins Coie that the Trustee contended mooted the

7    appeal because the Trustee's amendments nonsuited all arbitrable claims. Perkins

8    disputed the Trustee's attempts to nullify its appeal, arguing that under U.S.

9    Supreme Court precedent, the bankruptcy court lacked jurisdiction to permit the

10    Trustee to amend the complaint because amendment would affect a fully briefed

11    appeal. The Ninth Circuit nonetheless ruled Perkins Coie's appeal had been

12    mooted by the amended adversary complaint. Perkins Coie sought

13    reconsideration and a motion to stay pending a decision by the U.S. Supreme

14    Court on a related issue. This stay was granted, followed by a request for

15    additional briefing by the Ninth Circuit after the Supreme Court issued its ruling.

16    However, by this time, a proposed settlement had been reached between the

17    Trustee and Perkins. The Ninth Circuit was informed, the appeal stayed and

18    remand to the district court granted. Blood Decl., ¶¶ 11–12.

19        The amended adversary complaint filed by the Trustee is an additional

20    complication that potentially impacted the class action. When the Trustee filed its

21    amended complaint against Perkins Coie in the adversary proceeding, Perkins

22    Coie filed an amended answer. In the amended answer, Perkins Coie alleged Jun

23    Dam and all Class Members were necessary parties in the adversary proceeding

24    between the Trustee and Perkins Coie. Although the amended answer alleging

25    third party claims against the putative Class were never served given the

26

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 6

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

1    settlements, absent the settlements, Plaintiff and the putative Class would have
2    potentially been again litigating in bankruptcy court. Blood Decl., ¶ 13.

3        **C.**    **Mediation and Settlement Negotiations**

4        In the summer of 2022, the Class, Perkins Coie, and the Trustee agreed to
5    mediation with the Honorable Benjamin P. Hursh. Blood Decl., ¶ 19. Prior to
6    mediation, the negotiating parties exchanged information to prepare for and
7    facilitate productive mediation. *Id.*, ¶ 20. The parties also exchanged detailed
8    mediation briefs outlining their positions on the merits and on settlement. *Id.*
9    Prior to the in-person mediation, Judge Hursh held collective and individual
10   telephone calls with the three parties to prepare himself for mediation and to
11   push the parties to exchange information and fully develop their positions and
12   support therefor. *Id.*

13       On January 20, 2023, the negotiating parties attended an all day, in-person
14   mediation with Judge Hursh. *Id.*, ¶ 21. Despite considerable efforts, the parties
15   were unable to reach a settlement during the mediation. *Id.*

16       For over three months following the in-person mediation, the parties
17   continued their dialogue regarding settlement among themselves and with Judge
18   Hursh. *Id.* Judge Hursh's assistance and efforts were extremely valuable. Judge
19   Hursh had countless telephone calls with the parties, collectively and
20   individually, and with his assistance the parties were able to reach an overarching
21   framework and general terms for their respective settlements. *Id.*

22       After Judge Hursh's assistance with settlement negotiations ended on
23   April 30, 2023, the parties continued to work and draft their respective settlement
24   papers. *Id.*, ¶ 22. The Trustee continued to raise objections to the settlements and
25   the processes for obtaining approval of the settlements, continued to threaten it
26   would object to the class settlement unless the Trustee's often unworkable

BLOOD HURST & O' REARDON, LLP

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 7

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

1 | demands were met, and continued to seek money from the class to cover
2 | compensation of the Trustee and his lawyer. *Id.* After many additional months of
3 | painful negotiations, the Class and Perkins Coie executed the Stipulation of
4 | Settlement September 12, 2023. *Id.*, ¶ 23.

5 | Prior to and throughout the year-long settlement negotiations, the Class
6 | investigated and obtained confirmatory discovery. For example, the Class
7 | obtained information on the operational capacity of the Giga Watt Project's
8 | cryptocurrency mining facilities in relation to the funds released by Perkins Coie.
9 | Blood Decl., ¶ 14. The information obtained by Plaintiff's counsel allowed them
10 | to better estimate the amount of funds improperly released by Perkins Coie and
11 | to counter and respond to Perkins Coie's significantly lower estimate. *Id.*, ¶ 17.
12 | Plaintiff's discovery efforts and data analysis facilitated productive discussions
13 | with Perkins Coie and helped the Class and Perkins Coie agree on the fair
14 | resolution reflected in the Stipulation of Settlement. *Id.*

## III.    TERMS OF THE SETTLEMENT

### A.    The Settlement Benefits

The settlement provides for a $4,500,000 non-reversionary common fund (SA, § II.14) that will be used to pay class notice and administration costs, attorneys' fees and expenses as approved by the Court, a plaintiff service award as approved by the Court, and cash payments to Class Members.

### 1.    Cash Payments to Class Members

The Class includes all persons or entities who owned one or more Tokens on November 19, 2018. SA, § II.9. November 19, 2018, is the date Giga Watt declared bankruptcy and the date by which Token purchasers would reasonably have known the purchase of Tokens after November 19, 2018 would not result in access to Giga Watt's defunct cryptocurrency mining facilities.

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 8

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

To receive a cash payment, Class Members must complete and timely return a claim form. SA, §§ IV.1–2. The cash payment to each Class Member who submits a timely claim will be a *pro rata* amount of the money remaining in the common fund after payment of attorneys' fees and expenses, a service award, and notice and settlement administration costs (the "Net Fund"). *Id.*, §§ IV.1, IV.3.e. The *pro rata* amount for each Class Member will be calculated by dividing the number of Tokens owned by the respective Class Member on November 19, 2018, by the total number of Tokens owned by all Class Members who submit timely and valid claims, and then multiplied by the total amount in the Net Fund. *Id.*, § IV.1.

Class Members will have the option to receive their cash payment by electronic transfer or traditional paper check. *Id.*, § IV.3.f; Declaration of Cameron R. Azari ("Azari Decl."), ¶ 40. In the event Class Members do not opt to receive an electronic transfer, they will receive their cash payment via traditional paper check and will have 90 days from the issue date to cash or deposit the check. SA, § IV.3.f.

To the extent any monies remain in the Net Fund more than 90 days from the date the last check or electronic transfer is issued, the remaining balance will be redistributed *pro rata* to Class Members who received checks or accepted an electronic transfer in the first distribution. *Id.*, § IV.3.g. If after the first and second distributions to Class Members is completed, and if the amount remaining in the Net Fund is *de minimis* such that further distribution to Class Members would not be economically feasible, the remainder of the Net Fund will be donated to the Court-approved *cy pres* recipient. *Id.*, § IV.3.h. The parties propose Blockchain Association as the *cy pres* recipient because it is a 501(c)(6) not for profit organization advocating for a consensus on legislation that

BLOOD HURST & O' REARDON, LLP

MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 9

00205448

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

promotes the digital economy and consumer protection. Declaration of Kristin Smith in Support of *Cy Pres* Designation of Blockchain Association ("Cy Pres Decl."), ¶¶ 4, 6.

### B.    Notice and Settlement Administration

The settlement administrator will disseminate notice of the proposed settlement to Class Members. Email notice will be sent for all Class Members for whom an email address is available. If the email address is not available, a postcard notice will be sent via the U.S. mail to every Class Member whose physical mailing address can be identified in the records of (1) Perkins Coie, (2) the Giga Watt Estate, or (3) otherwise. SA, § V.C.1; Azari Decl., ¶¶ 20–21. Any undeliverable mailed or emailed notices will result in supplemental attempts to reach those Class Members for whom the mailed and emailed notices were returned as undeliverable. SA, § V.C.1; Azari Decl., ¶¶ 20–21, 23–25. The email and postcard notices will direct the Class Member to the detailed long-form notice posted on the settlement website. The long-form notice will also be mailed to Class Members upon request. SA, § V.B.2.

In addition, the administrator will design and implement an internet publication notice consisting of: (i) publishing notice of the proposed settlement for 31 days on various social media websites and include sponsored search listings on the three most frequently visited internet search engines (SA, § V.B.4; Azari Decl., ¶¶ 27–31, 34) and an informational release over PR Newswire to about 5,000 general media outlets (*id*., ¶¶ 35–36), and (ii) creating and maintaining a settlement website containing the long-form notice, the claim form, an opt out form, and information and documents regarding the settlement, such as the complaint and preliminary approval order. SA, § V.B.5; Azari Decl., ¶ 37.

BLOOD HURST & O' REARDON, LLP

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 10

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

The settlement website will be activated no later than the date by which the administrator will complete dissemination of the Class notice, which will be within thirty days of the Court's order granting preliminary approval of the settlement and will remain active until 60 days after the settlement benefits are distributed. SA, § V.B.5; Azari Decl., ¶ 37.

The parties propose that Epiq Class Action & Claims Solutions, Inc. be approved by the Court to serve as settlement administrator to: provide notice; administer and make determinations regarding claim forms; process settlement payments; make distributions; and provide other services necessary to implement the settlement. SA, § V.1; *see generally* Azari Declaration. The costs of the administrator will be paid out of the common fund. SA, § IV.3.b. Epiq is proposed because it is an experienced and well recognized settlement administration company which has also administered other settlements involving tokens and cryptocurrency. Azari Decl., ¶ 5; Blood Decl., ¶ 29. Counsel believe the estimated $157,000 total cost covering all forms of notice, all aspects of settlement administration, and claim review and cash benefit distribution is reasonable. Blood Decl., ¶ 29.

### C.    Attorneys' Fees and Plaintiff Service Award

At final approval, Class Counsel will file a motion for an award of attorneys' fees not to exceed twenty-five percent of the common fund, $1,125,000, and for reimbursement of reasonable out-of-pocket expenses. SA, §§ VIII.A, B. Any award of attorneys' fees and expenses will be paid from the common fund. *Id.*, § VIII.C.

At final approval, Plaintiff Blomquist will seek a service award in the amount of $5,000 for his role as a named plaintiff and class representative in consideration of his active participation on behalf of the class, putting his name

BLOOD HURST & O' REARDON, LLP

1  and reputation on the line in this contentious case for the sake of the Class, and

2  because the recovery would not have been possible without his efforts. *Id.*,

3  § VIII.D. Any Court-approved service award granted to Plaintiff Blomquist will

4  be paid from the common fund. *Id.*, § VIII.E.

## IV.    ARGUMENT

### A.    The Rule 23 Requirements for Class Certification Are Met

7  At the preliminary approval stage, "if a class has not [yet] been certified,

8  the parties must ensure that the court has a basis for concluding that it likely will

9  be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, Adv.

10  Comm. Notes to 2018 Amendment. All the requirements of Rule 23(a) must be

11  met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*

12  *Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

### 1.    Rule 23(a) Is Satisfied

### i.    The Class Is Sufficiently Numerous

15  Rule 23 (a)(1) requires the classes be "so numerous that joinder of all

16  members is impracticable. Classes comprised of at least forty members are

17  generally sufficient. *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010).

18  Here, the proposed Class encompasses more than 6,000 individuals. Azari Decl.,

19  ¶ 20; Blood Decl., ¶ 23. Rule 23(a)(1) numerosity requirement is satisfied.

### ii.    There Are Common Questions of Law and Fact

21  Rule 23(a)(2) requires that "there are questions of law or fact common to

22  the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to

23  demonstrate that the class members have suffered the same injury." *Wal-Mart*

24  *Stores, Inc.*, 564 U.S. at 349–50 (citation and quotation marks omitted).

25  Commonality is "construed permissively" and a single question of law or fact

26  common to the class may suffice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

BLOOD HURST & O' REARDON, LLP

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 12

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

1019 (9th Cir. 1998). Here, numerous common issues of law and fact affect the Class uniformly, primarily, whether Perkins Coie owed duties of care to Class Members to appropriately maintain and disburse their money, and whether Perkins Coie breached those duties. The commonality requirement is satisfied.

### iii. The Class Representative's Claims Are Typical

Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). Like commonality, the typicality requirement is interpreted "permissive[ly,]" and "requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020).

Here, the claims of Plaintiff Blomquist are typical of the claims of the other Class Members. Plaintiff pre-purchased Tokens through the initial token offering and like other Token purchasers, his purchase money was not released by Perkins Coie from the escrow account in step with completion of the Giga Watt Project. ¶¶ 5–6. Plaintiff and Class Members' claims thus arise from the same nucleus of facts concerning Perkins Coie's alleged wrongful distribution of Token purchase proceeds and are based on the same legal theories. The typicality requirement is satisfied.

### iv. The Proposed Class Representative and Proposed Class Counsel Will Adequately Represent Class Members

Rule 23(a)(4) requires "the representative parties fairly and adequately

BLOOD HURST & O' REARDON, LLP

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is composed of: (1) the absence of any conflicts of interest between a plaintiff and other class members; and (2) plaintiff and plaintiff's counsel's vigorous prosecution of the claims on behalf of absent class members. *Hanlon*, 150 F.3d at 1020.

Plaintiff Blomquist has the same claims as the other Class Members (¶¶ 29–80) and has no adverse or antagonistic interests to those of the other Class Members. ¶ 33. Plaintiff's motivation to pursue his claims–to recoup Token purchase money that was improperly released from escrow by Perkins Coie– directly aligns with that of other Class Members.

The proposed Class Counsel, Blood Hurst & O'Reardon, LLP (BHO), have devoted significant time to litigating on behalf of the Class and to protecting the Class's interests since the action was filed in December 2020. Over the last three years, BHO, along with Washington co-counsel Western Washington Law Group PLLC, have diligently worked in the Class's interest by opposing the Trustee's efforts to stay and enjoin the class action, first in the bankruptcy court and then on appeal. BHO also opposed the Trustee's efforts to modify the injunction (while the injunction order was on appeal) by which the Trustee sought to obviate the appeal with a motion to intervene and a motion to dismiss the class action. Blood Decl., ¶ 32. If necessary, BHO was ready to oppose Perkins Coie's motion to join Plaintiff and the Class as necessary parties in the Trustee's adversary proceeding against Perkins Coie. BHO will continue to devote the time and resources to completing the settlement and all aspects of settlement approval and relief distribution to the Class. Plaintiff Blomquist has devoted himself to the litigation for the benefit of absent Class Members. Blood Decl., ¶ 30. Plaintiff Blomquist has at all times understood his duties as class

BLOOD HURST & O'REARDON, LLP

1  representative, has acted in the best interest of the Class, and has actively

2  participated in the litigation and will continue to do so through final approval.

3  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019)

4  (due process requires class representatives adequately represent interests of

5  absent class members at all times). Plaintiff Blomquist and BHO satisfy Rule

6  23(a)'s adequacy requirement.

7  ### 2.    Rule 23(b)(3) Is Satisfied

8  Rule 23(b)(3) requires the Court find that "the questions of law or fact

9  common to class members predominate over any questions affecting only

10  individual members, and that a class action is superior to other available methods

11  for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

12  Both of these requirements are satisfied.

13  ### i.    Common Issues of Law and Fact Predominate Over
14  ### Any Potential Individual Questions

15  The "'predominance inquiry tests whether proposed classes are

16  sufficiently cohesive to warrant adjudication by representation' ... [and] focuses

17  on the relationship between the common and individual issues." *Hanlon*, 150

18  F.3d at 1022 (citation omitted). Determining whether common issues

19  predominate does not involve a precise test, but rather a court must pragmatically

20  assess the entire action and the issues involved. *Rodriguez v. Carlson*, 166

21  F.R.D. 465, 477 (E.D. Wash. 1996). "'Predominance' exists where 'a common

22  nucleus of facts and potential remedies dominate th[e] litigation.'" *Bund v.*

23  *Safeguard Props. LLC*, No. C16-920 MJP, 2018 U.S. Dist. LEXIS 6217, at *17

24  (W.D. Wash. Jan. 12, 2018) (quoting *Chamberlan v. Ford Motor Co.*, 402 F.3d

25  952, 962 (9th Cir. 2005)). The presence of certain issues not suitable for class-

26  wide adjudication, such as affirmative defenses peculiar to some individuals,

BLOOD HURST & O' REARDON, LLP

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 15

00205448

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

does not defeat predominance. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

The predominate common issues presented here are Perkin Coie's premature release of Class Members' money from the escrow account and whether Perkins Coie's conduct violated duties owned to the Class. A pragmatic assessment of the action and each Class Members' claim reveals that the same core facts and same legal issues dominate this litigation. The predominance requirement is satisfied.

### ii.  A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter

Rule 23(b)(3) requires that a class action be the superior method for the fair and efficient adjudication of the controversy and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Where a court is deciding the certification question in the settlement context, it need not consider manageability issues because "the proposal is that there be no trial," and thus manageability considerations are no hurdle to certification for purposes of settlement. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

A class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Perkins Coie. *See, e.g., Phillips*

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 16

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

*Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions ... permit the plaintiffs to pool claims which would be uneconomical to litigate individually. ... [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available.").

The class device permits Class Members to pool their claims, which they would realistically be unable to pursue through individual litigation. Were Class Members left to pursue their claims individually, the cost of litigation would far exceed the loss to each Class Member, making individual actions impracticable. In contrast, a class action affords the Class an opportunity to receive valuable relief in the most efficient and economical manner available, which is further highlighted by the fact that the certification question is being presented in the settlement context. Accordingly, a class action is the superior method for Class Members to adjudicate their claims.

### B.    The Proposed Settlement Merits Preliminary Approval

"The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). A district court may approve a settlement agreement "after a hearing and only on finding that it is fair, reasonable, and adequate ...." Fed. R. Civ. P. 23(e)(2).

In making this decision, Rule 23(e)(2) states that district courts must consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 17

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Rule 23(e) thus now largely overlaps the factors that the Ninth Circuit has long considered for settlement approval: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *In re Bluetooth Headseat Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

At the preliminary approval stage, the court "'determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members.'" *Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-SKV, 2021 U.S. Dist. LEXIS 239909, at *11 (W.D. Wash. Nov. 12, 2021) (citation omitted). The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

BLOOD HURST & O' REARDON, LLP

All the considerations listed by Rule 23(e) and the Ninth Circuit are met here.

### 1.    The Strength of Plaintiff's Case

Plaintiff believes he has a strong case for liability based on Perkins Coie's wrongful distribution of funds from the escrow account and would be able to recover money on behalf of the Class. ¶¶ 36–80.

However, there would have been contested issued regarding damages and whether the Class's damages analyses would be accepted. Plaintiff and Perkins Coie had widely divergent estimates of the damages potentially owed to the Class and disagreements regarding the information from which damages could be derived and ascertained.

If Perkins Coie prevailed on this contested issue at trial or summary judgment, Class Members would receive less than provided for in this settlement, or nothing at all. Given this very real risk and uncertainty, the $4.5 million non-reversionary common fund is an excellent result for the Class.

### 2.    The Adequacy of Relief Taking into Account Risk, Expense, Complexity and Likely Duration of Further Litigation

Th relief is very fair and adequate considering the costs, risk, complexity and likely duration of further litigation. Litigation and trial always carry inherent risk. This action is no exception given that it is innately complex and made further complex by the Giga Watt bankruptcy proceedings.

Here, the complexity, risk and delay came from multiple fronts. First, the Class had to prevail on the consolidated appeal regarding "ownership" of three of the Class claims and, even on the two claims "owned" by the Class, it had to prevail in reversing the bankruptcy court's preliminary injunction covering those

BLOOD HURST & O' REARDON, LLP

two claims. While the Class's position on appeal is very strong, appeals take time. And especially here because the losing party in the appeal to the district court can further appeal to the Ninth Circuit, thereby building in roughly two more years of delay, risk, and expense.

Additional risk, expense and delay would await the Class after the appeal. Perkins Coie had stated its intention to challenge the pleadings followed by formal discovery, class certification, dispositive motions, and trial. For instance, Perkins Coie's purported defenses were significant and included that (i) there was no escrow agreement signed by the parties (only statements regarding an escrow in marketing documents), (ii) if there was an escrow agreement, Perkins Coie abided by its terms in releasing escrow funds in accordance with the issuance of Tokens (as opposed to the operational status of the Giga Watt Project), (iii) Perkins Coie had no duty to determine the operational status of the Giga Watt Project prior to releasing escrow funds, (iv) any attempt to impose such a duty was unenforceable due to lack of adequate instructions regarding how the operational status of the Giga Watt Project was to be measured, and (v) even if Perkins Coie had a duty to determine the mine's operational status prior to releasing escrow funds, Perkins had evidence that the operational status of the Giga Watt Project meant its maximum liability to the Class was $4.2 million. Blood Decl., ¶ 33.

Yet further risk, expense and delay would no doubt come from the Trustee's aggressive litigation tactics which have been a predominate factor in driving up litigation costs and protracting litigation and settlement. For instance, the Trustee would no doubt renew his efforts to intervene in the Class action and seek to dismiss certain of the Class claims under SLUSA. Although Class Counsel believes the Trustee's intervention and standing to dismiss claims to

MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 20

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

which it is not a party would be legally groundless, any such motions would significantly increase the costs and time needed to resolve this case. Blood Decl., ¶ 34.

In addition, absent settlement, the Trustee and Perkins Coie would have sought to further embroil the Class in bankruptcy proceedings via Perkins Coie's third party claims against the Class alleged in Perkins Coie's amended answer to the Trustee's amended adversary complaint against Perkins Coie. Joining the Class as a necessary party in the Perkins Coie-Trustee adversary proceeding might have allowed the Trustee to move to dismiss the Class claims as barred by SLUSA in *the bankruptcy court*, providing the Trustee means around the standing difficulties it would clearly face seeking to dismiss the Class claims in the district court proceedings to which the Trustee was not a party. Blood Decl., ¶ 35.

Further, all this litigation would almost certainly result in additional appeals by the parties, resulting in yet more risk, cost and delay. Given all this, the settlement which puts cash in the pockets of Class Members, creates a common fund greater than Perkins' estimated liability to the Class, and avoids the risk of non-recovery is extremely favorable.

### 3.    The Risk of Maintaining Class Status Through Trial

The action is still in the pleadings stage, and the parties have not briefed class certification. Class certification proceedings are distant in this action, and the risk of dismissal or derailment into bankruptcy court before reaching those proceedings is not insignificant. Class certification, if and when it arrives, will present certain risks, particularly given the factual disputes regarding when and how much power was made available to Class Members, which could complicate the damages model proposed by the Class. In addition, if the Class was certified,

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 21

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

1  Perkins Coie would likely seek a Rule 23(f) appeal of any decision by the Court

2  granting class certification, resulting in additional delay, risk, and cost to Class

3  Members.

### 4. The Proposed Method of Distribution to Class Members Is Equitable and Effective

6  Rule 23(e)(2)(C) and (D) requires consideration of whether distribution is

7  equitable and "the effectiveness of any proposed method of distributing relief to

8  the class, including the method of processing class-member claims." Fed. R. Civ.

9  P. 23(e). "Often it will be important for the court to scrutinize the method of

10  claims processing to ensure that it facilitates filing legitimate claims. A claims

11  processing method should deter or defeat unjustified claims, but the court should

12  be alert to whether the claims process is unduly demanding." *Id.*, Advisory

13  Comm. Note to 2018 amendment.

14  Here, the cash payments will be fairly distributed *pro rata* using a fraction,

15  where the number of Tokens owned by the respective Class Members on

16  November 19, 2018, divided by the total number of Tokens owned by all Class

17  Members who submit timely, valid Claim Forms. *Id.*, § IV.1. Thus, the

18  settlement treats Class Members equitably in relation to each other.

19  The claims process is also simple. To submit a claim for a cash payment,

20  Class Members need only complete a straightforward claim form confirming the

21  claimant is a Class Member and providing information regarding Token

22  ownership, purchase and sale. SA, §§ IV.4.a–b. Claims may be submitted either

23  through the settlement website or by U.S. mail. *Id.*, and Ex. F (claim form);

24  Azari Decl., ¶ 40. If additional information or documents are needed to review

25  the claim, Epiq will attempt to obtain the information from Perkins Coie, other

26  sources, or contact the Class Member. SA, § IV.4.c. Claims will not be rejected

without giving the Class Member an opportunity to cure any deficiencies and provide additional support for their claim. *Id.*, §§ IV.4.c–d.

Class Members have the option of receiving their cash payment by digital payment or a traditional paper check. SA, § IV.3.f, and Ex. F (claim form); Azari Decl., ¶ 40.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

This consideration is satisfied when "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). The parties may obtain sufficient information through formal or informal discovery. *Id.*

In part because of the extremely contentious and prolonged settlement process, Plaintiff's Counsel had the opportunity to obtain significant amounts of information from various sources and, in addition, the settling parties exchanged information. The information was used to establish, *inter alia*, facts relevant to Class Members' purchase of Tokens during the initial token offering, Perkins Coie's premature release of funds from the escrow account, and the estimated damages suffered by the Class. Blood Decl., ¶¶ 5, 15, 17.

The information exchanged and confirmatory discovery meant Counsel's knowledge of the relevant facts was well developed before settlement was reached and allowed counsel to verify the fairness of the settlement. Blood Decl., ¶ 17. Counsel's verification of facts of this case, and knowledge of the practice area more broadly also informed their clear view of the strength and weaknesses of the case, and the decision to strongly recommend that the Court grant preliminary approval to the settlement. *Id.*, ¶ 18.

BLOOD HURST & O' REARDON, LLP

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

BLOOD HURST & O' REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### 6. The Settlement Is the Product of Arm's-Length Negotiations that Were Free of Collusion

The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*, 654 F.3d at 946–47 (cleaned quote).

The settlement negotiations were contentious and well beyond "arm's-length" to the point where on many occasions it appeared that settlement could not be reached. Blood Decl., ¶ 22.

Judge Hursh's involvement in the negotiations throughout a large part of the settlement process also shows the absence of collusion. *See D.S. v. Wash. State Dep't of Children, Youth, & Fams.*, No. 2:21-cv-00113-BJR, 2022 U.S. Dist. LEXIS 170738, at *5 (W.D. Wash. Sept. 21, 2022). Following Judge Hursh's heroic mediation efforts which ended in April 2023, the parties were still left with significant disagreements and issues to resolve before a settlement was finally reached. Blood Decl., ¶¶ 22–23.

*In re Bluetooth* identified three "signs" of possible collusion: (1) "'when counsel receive[s] a disproportionate distribution of the settlement'"; (2) "when the parties negotiate a 'clear sailing' arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. 654 F.3d at 947 (citations omitted).

None of the *In re Bluetooth* indicators are present here. There is no "clear sailing provision" and Class Counsel will not seek fees that exceed the 25% of the common fund benchmark used in the Ninth Circuit. *Id.* at 942; SA, § VIII.A. Perkins Coie does not have any reversionary interest in the common fund, rather the settlement makes every effort to distribute all net funds to Class Members,

1  and ultimately to a *cy pres* recipient only when it is not economically feasible to

2  distribute remaining funds, if any, to Class Members. SA, § IV.3.h. Plaintiff's

3  Counsel will apply for fees from this non-reversionary common fund, so that

4  there was every incentive to secure the largest fund possible. *Id.* §§ VIII.A–C.

5  There is no collusion in the settlement negotiations or in the settlement terms.

6      Class Counsel have also adequately represented the Class throughout the

7  litigation as described above and also throughout the settlement process. This is

8  shown both by the fair settlement obtained for the Class, and by the sheer length

9  of the settlement process during which counsel was prepared to walk away rather

10  than unfairly compromise the interests of the Class. Blood Decl., ¶ 32.

### 7.    The Reaction of Class Members to the Proposed Settlement

13      The Class has yet to be notified of the settlement and given an opportunity

14  to object, so it is premature to assess this factor. Prior to final approval, the Court

15  will be able to review all objections or other comments received from Class

16  Members.

### 8.    Separate Agreements Relating to the Settlement

18      Rule 23(e)(3) requires that the parties "must file a statement identifying

19  any agreement made in connection with the [settlement] proposal." Fed. R. Civ.

20  P. 23(e)(3).

21      The only separate non-disclosed agreement between the parties relates to

22  the threshold of opt-outs necessary to trigger Perkins Coie's right to terminate

23  the settlement. SA, § XI.A.2. "This type of provision is known as a 'blow-up'

24  provision and is common in securities class actions" and other class action

25  settlements. *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC,

26  2022 U.S. Dist. LEXIS 188621, at *22 (S.D. Cal. Oct. 13, 2022).

BLOOD HURST & O' REARDON, LLP

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 25

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

The non-disclosure of the exact number of Tokens that will trigger the blow-up provision does not alter what relief Class Members will receive and hence courts hold that the existence of such an agreement and its non-disclosure does not affect the fairness or adequacy of a proposed settlement. *In re BofI Holding,* 2022 U.S. Dist. LEXIS 188621, at *22–23; *Seb Inv. Mgmt. AB v. Symantec Corp.*, No. C 18-02902 WHA, 2022 U.S. Dist. LEXIS 24241, at *23–24 (N.D. Cal. Feb. 10, 2022) (keeping blow-up confidential "did not affect the fairness and adequacy of the settlement or undermine class members' ability to independently assess the fairness, reasonableness, and adequacy of the settlement."). Courts have also expressed the importance of keeping such agreements confidential to prevent third parties from using the information in the agreements to obstruct or undermine a settlement. *Longo v. OSI Sys., Inc.*, No. CV 17-8841 FMO (SKx), 2022 U.S. Dist. LEXIS 158606, at *16–17 (C.D. Cal. Aug. 31, 2022) (there are compelling reasons to keep the blow-up threshold confidential "'to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.'") (citation omitted).

The undisclosed side agreement here does not impact the Court's and Class Members' ability to assess the proposed settlement's fairness, adequacy, and reasonableness. The side agreement is not publicly disclosed only to prevent knowledge of the threshold number of Tokens which triggers Perkins Coie's right to terminate the settlement and prevent use of that information for improper purposes. At the Court's request, the parties will submit the side agreement for its in-camera review.

### C.    The Proposed Notice Plan Is Appropriate

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "'The yardstick against which [courts]

MEMORANDUM ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 26

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1  measure the sufficiency of notices in class action proceedings is one of

2  reasonableness.'" *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018)

3  (citation omitted). The best notice is that which is "reasonably calculated, under

4  all the circumstances, to apprise interested parties of the pendency of the action

5  and afford them an opportunity to present their objections." *Mullane v. Cent.*

6  *Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

7      Notice should describe the settlement in sufficient detail to allow class

8  members with adverse viewpoints to investigate and to come forward and be

9  heard. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1044 (9th Cir. 2019). The

10 proposed Class Notice Program satisfies this standard. The long-form class

11 notice (SA, Ex. A) is clear, precise, informative, and meets all the requisite

12 standards, allowing Class Members to investigate the settlement and its terms,

13 decide whether to remain in or opt out of the Class, or object to the settlement. It

14 was modeled on the Federal Judicial Center's guidelines for adequate class

15 notice. The email and postcard notices (SA, Exs. B and C) are a clear, concise

16 summary, inform Class Members of the important dates and decisions, and direct

17 them to the settlement website where additional information including the long-

18 form notice is available. *Resnick v. Frank (In re Online DVD-Rental Antitrust*

19 *Litig.)*, 779 F.3d 934, 946 (9th Cir. 2015) (holding email notice was sufficient

20 when it provided a summary of the action, potential benefits to Class Members,

21 and a link to where additional information could be obtained).

22      Class notice will be disseminated directly by emailing the email notice or

23 mailing the postcard notice to all Class Members for which a current email or

24 physical address can be obtained. SA, § V.C.1; Azari Decl., ¶¶ 20–25. The

25 administrator will also conduct an internet publication notice program through

26 which notice of the proposed settlement will be published on several social

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 27

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00205448

media websites and acquire sponsored search listings on the three most frequently visited internet search engine. SA, § V.B.4; Azari Decl., ¶¶ 26–34. The internet notice will also include establishing a settlement website where the class notice will be posted along with other settlement information. SA, § V.B.5; Azari Decl., ¶ 37. The administrator expects the class notice to reach over 90% of the Class. Azari Decl., ¶ 42.

The Class Notice Program is consistent with, and exceeds, the Ninth Circuit-approved standard for class notice and the requirements of Federal Rules of Civil Procedure Rule 23(c)(2)(B).

## V.    CONCLUSION

For the reasons stated above, the Court should grant preliminary approval of the proposed settlement, preliminarily certify the Class, appoint Blood Hurst & O'Reardon, LLP as Class Counsel, appoint Erick Blomquist as the Class Representative, and direct that class notice be disseminated in accordance with the Stipulation of Settlement.

Respectfully submitted,

Dated: November 22, 2023

WESTERN WASHINGTON LAW GROUP PLLC
DENNIS J. MCGLOTHIN (#28177)
ROBERT J. CADRANELL (41773)

By:    *s/ Dennis J. McGlothin*
DENNIS J. MCGLOTHIN

P.O. Box 468
Snohomish, WA  98291
Tel: 425/728-7296, ext. 4
dennis@westwalaw.com
robert@westwalaw.com
docs@westwalaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (*pro hac vice*)
THOMAS J. O'REARDON II
(*pro hac vice*)

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 28

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448

BLOOD HURST & O' REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 29

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00205448