1   WESTERN WASHINGTON LAW GROUP PLLC
    DENNIS J. MCGLOTHIN (#28177)
2   ROBERT J. CADRANELL (41773)
    P.O. Box 468
3   Snohomish, WA  98291
    Tel: 425/728-7296, ext. 4
4   dennis@westwalaw.com
    robert@westwalaw.com
5   docs@westwalaw.com

6   BLOOD HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (*pro hac vice*)
7   THOMAS J. O'REARDON II (*pro hac vice*)
    PAULA R. BROWN (254142)
8   501 West Broadway, Suite 1490
    San Diego, CA  92101
9   Tel: 619/338-1100
    619/338-1101 (fax)
10  tblood@bholaw.com
    toreardon@bholaw.com
    pbrown@bholaw.com
11
    Attorneys for Plaintiffs
12
               **UNITED STATES DISTRICT COURT**
13
               **EASTERN DISTRICT OF WASHINGTON**
14
    ERIC BLOMQUIST, individually          Case No: 2:20-cv-00464-SAB
15  and on behalf of all others similarly
    situated, and JUN DAM,                **CLASS ACTION**
16  individually,
                                          **PLAINTIFF'S NOTICE OF**
17          Plaintiffs,                   **MOTION AND MOTION FOR**
                                          **FINAL APPROVAL OF CLASS**
18          v.                            **ACTION SETTLEMENT AND**
                                          **REQUEST FOR ATTORNEY'S**
19  PERKINS COIE, LLP, a Washington       **FEES, EXPENSES AND SERVICE**
    limited liability partnership;        **AWARD; MEMORANDUM IN**
20  PERKINS COIE CALIFORNIA,              **SUPPORT THEREOF**
    P.C., a California corporation;
21  PERKINS COIE U.S., P.C.; and
    LOWELL NESS, individually,            **DATE:          May 21, 2024**
22                                        **TIME;          1:30 p.m.**
            Defendants.                   **JUDGE:         Stanley A. Bastian**
23                                        **COURTROOM:  By ZOOM Video**

24                                        **With Oral Argument**

25                                        Chief Judge Stanley A. Bastian

26                                        Complaint Filed:   December 16, 2020

BLOOD HURST & O' REARDON, LLP

1   Plaintiff Eric Blomquist ("Plaintiff") submits this memorandum in support

2   of the Motion for Final Approval of Class Action Settlement, Request for

3   Attorney's Fees and Costs, and Class Representative Service Award to fully

4   resolve all claims brought individually and on behalf of a class against

5   Defendants Perkins Coie, LLC, Perkins Coie California, P.C., Perkins Coie U.S.,

6   P.C., and Lowell Ness (collectively, "Perkins Coie").[1]

7   **I.      INTRODUCTION**

8   This settlement is the product of a protracted arm's-length and often

9   contentious series of negotiations where Perkins Coie sought to resolve two

10  separate actions pending against it, while Plaintiff fended off an aggressive effort

11  by the Bankruptcy Trustee in *In re Giga Watt Inc.*, No. 18-03197-FPC7 (Bankr.

12  E.D. Wash.) to bring these class claims into bankruptcy court. Had the Trustee

13  been successful, the Class would have received nothing or next to nothing.

14  Instead, because of this class action settlement, Class Members will recover most

15  of their losses.

16  Meanwhile, Perkins Coie and the Bankruptcy Trustee have separately

17  settled the estate's claims against Perkins Coie for harms alleged by the Trustee

18  on behalf of the debtor. Most of the money from the bankruptcy settlement will

19  save the bankruptcy from administrative insolvency, leaving the class settlement

20  as the primary source of recovery for the holders of the Tokens ("Tokens") at

21  issue. The class and Trustee settlements are separate—Perkins Coie provides

22  separate consideration for the settlements and the settlements have separate

23  approval processes. However, neither settlement will take effect until both are

24

25  _____

26  [1]      Throughout this memorandum, all capitalized terms have the same meaning as defined in the Stipulation of Settlement. (ECF 61-4).

BLOOD HURST & O' REARDON, LLP

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 1

00171603

approved by their respective courts: the class settlement by this Court and the Trustee settlement by the bankruptcy court.

The settlement provides a non-reversionary fund of $4.5 million that provides Class Members pro-rata payments based on the number of Tokens each Class Members owned divided by the total number of Tokens owned by all Class Members who submit valid Claims. Claimants will share all money available to Class Members, other than any de minimis amount, if any, remaining that is economically infeasible to distribute to the Claimants. The amount that cannot be economically distributed to Claimants it will be donated to the non-profit organization Blockchain Association, whose mission is to further the use of blockchain technology.

On February 2, 2022, the Court preliminarily approved the proposed Settlement. *See* ECF No. 67. The Class has been notified in accordance with the Court-approved notice plan. The Class Members have reacted favorably to the settlement, as shown by the number of claims made, with no Class Members opting out of the Settlement Class and no Class Members objecting to the Settlement. *See* Kimball Decl., ¶¶ 20, 21. The Parties now seek final approval of the settlement, an award of attorneys' fees, costs, and expenses, approval of a service award for the Class Representative, and entry of judgment.

The Settlement accomplishes Plaintiff's litigation goals and represents a fair, reasonable, and adequate recovery for the Class. The attorneys' fees, costs, and expenses requested by Class Counsel readily meet the Ninth Circuit standards. Under the Settlement, Class Counsel seek $1,125,000.00 in attorneys' fees, which amounts to 25% of the Settlement Fund, plus reimbursement of expenses of $9,760.65. The requested Class Representative service award of $5,000 is well within the acceptable range of service awards.

BLOOD HURST & O' REARDON, LLP

1    The proposed Settlement is fair, reasonable, and adequate. Therefore,

2    Plaintiff respectfully requests an order granting final approval of the Settlement

3    and awarding the requested attorneys' fees, costs, and expenses, and the Class

4    Representative's service award.

5    **II.    PROCEDURAL HISTORY**

6    The Motion for Preliminary Approval and Declaration of Timothy G.

7    Blood in Support of Motion for Preliminary Approval ("Blood Preliminary

8    Approval Decl.") described in detail the lengthy procedural history of this matter

9    and the extensive settlement negotiations that culminated in the Settlement

10   Agreement. *See* ECF 61-2 ("Blood Preliminary Approval Decl."). Rather than

11   repeat those details here, they are incorporated by this reference and summarized

12   below.

13   Plaintiff alleges Defendants breached their fiduciary duty to Plaintiff and

14   the Class, breached their contracts with Plaintiff and the other Class Members,

15   and violated Washington's Consumer Protection Act ("CPA"), RCW 19.86.020,

16   and Escrow Agent Registration Act ("WERA"), RCW 18:44 by releasing the

17   Class Members' money held in escrow improperly, in violation of the terms of

18   the escrow agreement.

19   Prior to this class action, bankruptcy proceedings involving Giga Watt,

20   Inc. were ongoing. The bankruptcy case began as a Chapter 11 reorganization in

21   2018. After almost two years of failed reorganization efforts and when the estate

22   was close to insolvency, on September 30, 2020, the bankruptcy case was

23   converted to a Chapter 7 liquidation. *See* Blood Preliminary Approval Decl., ¶ 6.

24   After the bankruptcy case was converted to Chapter 7 liquidation, the

25   Trustee filed an adversary proceeding, Case No. 20-80031, against Perkins Coie

26   and others, alleging that the debtor had been damaged by Perkins Coie's

BLOOD HURST & O' REARDON, LLP

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 3

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00171603

1   improper release of Class Members' money from escrow, even though evidence

2   showed the debtor received almost all the escrowed funds. *Id*., ¶ 7.

3          Prior to this settlement, the Parties were litigating both in this Court and in

4   the bankruptcy court. However, after protracted negotiations between the Parties,

5   most of which was mediated by the Honorable Benjamin P. Hursh, this

6   settlement was reached. *Id*., ¶ 19.

7   **III.    THE PRELIMINARY APPROVAL ORDER**

8          On February 2, 2024, the Court entered the Preliminary Approval Order.

9   (ECF No. 67). The Court analyzed the requirements of Fed. R. Civ. P. 23(a) and

10  23(b)(3), found the requirements to be satisfied, certified the Class for Settlement

11  purposes, and approved the Notice Program. (*Id*.)

12  **IV.    THE SETTLEMENT AGREEMENT**

13         **A.    The Settlement Class Definition**

14         As set forth in the Settlement Agreement and the Court's Preliminary

15  Approval Order (ECF Nos. 61-4, 67), the Class is defined as all persons or

16  entities who owned one or more Tokens on November 19, 2018. November 19,

17  2018, is the date Giga Watt declared bankruptcy and therefore the date by which

18  Token purchasers would reasonably have known their Tokens would not result in

19  access to Giga Watt's defunct cryptocurrency mining facilities.

20         **B.    Settlement Benefits**

21         As detailed in the Preliminary Approval Motion, the Settlement provides

22  for a $4,500,000 non-reversionary Common Fund (Settlement Agreement

23  ("SA"), § II.14) that will be used to pay attorneys' fees and expenses as approved

24  by the Court, Class Notice and administration costs, a Class Representative

25  service award as approved by the Court, and Cash Payments to Class Members.

26  To receive a Cash Payment, Class Members must complete and timely return a

BLOOD HURST & O' REARDON, LLP

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 4

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00171603

1   Claim Form. SA, §§ IV.1–2. The last day to submit a claim is April 15, 2024. As

2   of April 8, 2024, 471 Claims have been submitted, representing holders of about

3   21 million tokens. *See* Kimball Declaration, ¶ 22.

4   ### C.    The Court-Approved Class Notice Program Was Successful

5   As the claims rate suggests, the Class Notice Program was successful.

6   Tokens were held by a wide range of people located throughout the United State

7   and in many other counties. The Tokens were actively traded before November

8   19, 2018. With some significant exceptions, it was largely unknown who owned

9   Tokens as of November 19, 2018. Therefore, notice was overinclusive. Notice

10  was sent by mail or email to approximately 6,400 people who at some point held

11  Tokens. Class Notice was also provided through targeted publication and an

12  online advertising campaign. *See* Kimball Decl., ¶ 2.

13  Emails were subsequently sent to remind people to file claims if they

14  believed they owned Tokens on November 19, 2018. *Id*, ¶ 9. Class Counsel also

15  cross-checked creditor claims filed in the bankruptcy court and correspondence

16  with Class Members to ensure that those who were most likely to be Class

17  Members have filed a Claim. If they had not filed a Claim, Class Counsel

18  contacted likely Class Members by phone and email to remind them of the

19  Settlement and encourage claim submission. *See* Declaration of Timothy G.

20  Blood in Support of Final Approval ("Blood Final Approval Decl.")., ¶¶ 3-5.

21  ## V.    THE STANDARDS FOR FINAL APPROVAL

22  "The claims, issues, or defenses of a certified class – or a class proposed to

23  be certified for purposes of settlement – may be settled ... only with the court's

24  approval." Fed. R. Civ. P. 23(e). A district court may approve a settlement

25  agreement "after a hearing and only on finding that it is fair, reasonable, and

26  adequate ...." Fed. R. Civ. P. 23(e)(2).

BLOOD HURST & O' REARDON, LLP

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 5

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00171603

1    In making this decision, Rule 23(e)(2) states that district courts must

2    consider whether:

3    (A)    the class representatives and class counsel have adequately

4    represented the class;

5    (B)    the proposal was negotiated at arm's length;

6    (C)    the relief provided for the class is adequate, taking into account:

7    (i)    the costs, risks, and delay of trial and appeal;

8    (ii)    the effectiveness of any proposed method of distributing relief

9    to the class, including the method of processing class-member

10    claims;

11    (iii)    the terms of any proposed award of attorney's fees, including

12    timing of payment; and

13    (iv)    any agreement required to be identified under Rule 23(e)(3);

14    and

15    (D)    the proposal treats class members equitably relative to each other.

16    Fed. R. Civ. P. 23(e)(2).

17    Rule 23(e) largely overlaps with the factors the Ninth Circuit has long

18    considered for settlement approval: "(1) the strength of the plaintiff's case;

19    (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

20    risk of maintaining class action status throughout the trial; (4) the amount offered

21    in settlement; (5) the extent of discovery completed and the stage of the

22    proceedings; (6) the experience and views of counsel; (7) the presence of a

23    governmental participant; and (8) the reaction of the class members to the

24    proposed settlement." *In re Bluetooth Headseat Prods. Liab. Litig.*, 654 F.3d

25    935, 946 (9th Cir. 2011).

26

BLOOD HURST & O' REARDON, LLP

00171603

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 6

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

1    Judicial policy strongly favors the settlement of class actions. *Class*

2  *Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[V]oluntary

3  conciliation and settlement are the preferred means of dispute resolution."

4  *Officers for Justice*, 688 F.2d at 625. Class actions particularly lend themselves

5  to compromise because of difficulties of proof, uncertainties of the outcome, and

6  the typical length and size of the litigation. *Van Bronkhorst v. Safeco Corp.*, 529

7  F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling

8  and quieting litigation. This is particularly true in class action suits ….").

9  **VI.    THE SETTLEMENT MERITS FINAL APPROVAL**

10    As part of the preliminary approval process, the Court considered the non-

11  exhaustive factors to determine whether a proposed settlement is "fair, adequate

12  and reasonable." *See* ECF No. 67, at 2. The Motion for Preliminary Approval

13  and supporting declarations and documents detail the factors and the reasons the

14  settlement should be approved. *See* ECF Nos. 61, 61-2.

15    Notice has now been disseminated and information about the claims rate,

16  opt outs, and objections are known, and no other facts detailed in the preliminary

17  approval briefing has changed. Rather than repeat that briefing (ECF Nos. 61,

18  61-2), each fairness factor is summarized below, and the very positive reaction of

19  the Class is discussed. *See Franco v. E-3 Sys.*, No. 19-cv-01453-HSG, 2021 U.S.

20  Dist. LEXIS 107399, at 14 (N.D. Cal. June 8, 2021) (granting final approval and

21  noting "no facts have changed that would affect the Court's previous finding in

22  its preliminary approval order").

23    **A.    Certification of the Settlement Class**

24    The Court's Preliminary Approval Order analyzed the requirements of

25  Fed. R. Civ. P. 23(a) and 23(b)(3), found the requirements to be satisfied, and

26

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 7

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00171603

BLOOD HURST & O' REARDON, LLP

1    certified the Settlement Class for settlement purposes only. *See* ECF No. 67 at 2-

2    3. Nothing has changed that would affect the Court's ruling on class certification.

3    **B.    The Strength of Plaintiff's Case**

4    Plaintiff believes he has a strong case for liability based on Perkins Coie's

5    alleged wrongful distribution of funds from the escrow account and would be

6    able to recover money on behalf of the Class. *See* ECF No. 59 (First Amended

7    Complaint), ¶¶ 36–80. However, there are numerous contested issues regarding

8    damages and whether the Class's damages analyses would be accepted. Plaintiff

9    and Perkins Coie had widely divergent estimates of the damages potentially

10   owed to the Class and disagreements regarding the information from which

11   damages could be derived and ascertained. The records are not clear and are

12   often inconsistent. Information about how much of the Giga Watt facilities

13   became operational, the extent they were operation, who was afforded access to

14   operational facilities and what constituted an operational facility within the

15   meaning of the applicable documents was unclear and hotly disputed. Even the

16   terms of the escrow agreement lacked clarity.

17   Meanwhile, the Trustee continued to maintain that all of the Class

18   Members' escrowed money belonged to the bankruptcy estate. This claim was

19   partially backed by the bankruptcy court and was on appeal to this Court.

20   However, even while on appeal, the Trustee attempted to stay this litigation and

21   the bankruptcy court signaled an openness to doing so. Doing so would have

22   effectively ended the litigation and prevented any meaningful recovery for the

23   Class. Meanwhile, more appeals would likely have followed.

24   Given the very real risks and uncertainty, the $4.5 million non-

25   reversionary common fund is an excellent result for the Class and weighs in

26   favor of final approval.

BLOOD HURST & O' REARDON, LLP

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 8

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00171603

### C. The Settlement Provides Significant Relief When Taking Into Account the Inherent Risks of Continued Litigation

The relief is fair and adequate considering the costs, risk, complexity and likely duration of further litigation. Litigation and trial carry inherent risk. This is particularly true given the record-keeping problems and the Giga Watt bankruptcy proceedings.

Here, the complexity, risk and delay came from multiple fronts. First, the Class had to prevail on the consolidated appeal regarding "ownership" of three of the Class claims and, even on the two claims "owned" by the Class, it had to prevail in reversing the bankruptcy court's preliminary injunction covering those two claims. While the Class's position on appeal is very strong, appeals take time. Particularly here because the losing party in the appeal to the district court can further appeal to the Ninth Circuit, thereby building in additional years of delay, risk, and expense.

Additional risk, expense, and delay would await the Class after the appeal. Perkins Coie had stated its intention to challenge the pleadings followed by formal discovery, class certification, dispositive motions, and trial. Perkins Coie's purported defenses were significant and included that (i) there was no escrow agreement signed by the parties (only statements regarding an escrow in marketing documents), (ii) if there was an escrow agreement, Perkins Coie abided by its terms in releasing escrow funds in accordance with the issuance of Tokens (as opposed to the operational status of the Giga Watt Project), (iii) Perkins Coie had no duty to determine the operational status of the Giga Watt Project prior to releasing escrow funds, (iv) any attempt to impose such a duty was unenforceable due to lack of adequate instructions regarding how the operational status of the Giga Watt Project was to be measured, and (v) even if

BLOOD HURST & O' REARDON, LLP

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00171603

BLOOD HURST & O' REARDON, LLP

Perkins Coie had a duty to determine the mine's operational status prior to releasing escrow funds, Perkins had evidence that the operational status of the Giga Watt Project meant its maximum liability to the Class was $4.2 million. *See* Blood Preliminary Approval Decl., ¶ 33.

Additional risk, expense and delay would come from the Trustee's aggressive litigation tactics which have been a substantial factor in driving up litigation costs and protracting litigation and settlement. For instance, the Trustee stated his intention to renew his efforts to intervene in the class action and seek to dismiss those claims, leaving nothing for the Class. Although Class Counsel believes the Trustee's intervention and standing to seek dismissal of the claims to which it is not a party would be baseless, it would significantly increase the costs and time needed to resolve this case. *Id.*, ¶ 34.

Given all this, the settlement, which provides timely relief to Class Members, establishes a common fund greater than Perkins' estimated liability to the Class and avoids the risk of non-recovery is an excellent result.

### D.    The Extent of Discovery and Stage of Proceedings

Plaintiff's Counsel obtained significant amounts of information from Defendants, their own investigation, including work with class members, and information gleaned from the bankruptcy to make an informed decision. The information was used to establish, *inter alia*, facts relevant to Class Members' purchase of Tokens during the initial token offering, Perkins Coie's premature release of funds from the escrow account, and the estimated damages suffered by the Class. *See* Blood Preliminary Approval Decl., ¶¶ 5, 15, 17.

The information exchanged and confirmatory discovery meant Counsel's knowledge of the relevant facts was well developed before settlement was reached and allowed counsel to verify the fairness of the settlement. *Id.*, ¶ 17.

1    Counsel's verification of facts of this case, and knowledge of the practice area

2    more broadly also informed their clear view of the strength and weaknesses of

3    the case, and the decision to strongly recommend that the Court grant

4    preliminary approval to the settlement. *Id.*, ¶ 18.

5        **E.    The Experience and Views of Counsel**

6        Class Counsel have substantial experience serving as class counsel and

7    believe the Settlement is fair, reasonable, and adequate. *See* Blood Preliminary

8    Approval Decl., ¶ 31, and Ex. 1 thereto (Class Counsel's Firm Resume); *In re*

9    *Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (noting the

10   experience of plaintiffs' counsel and that "[t]he recommendations of plaintiffs'

11   counsel should be given a presumption of reasonableness").

12       **F.    The Reaction of Settlement Class Members Favor Final**

13       **Approval**

14       A favorable reaction by class members to the proposed settlement supports

15   final approval. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

16   2000). "It is established that the absence of a large number of objections to a

17   proposed class action settlement raises a strong presumption that the terms of a

18   proposed class settlement action are favorable to the class members." *Nat'l Rural*

19   *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

20       The terms of the Settlement were provided to Class Members in the Court-

21   approved Class Notice, including in the Class Notice sent by mail and email to

22   potential Class Members and published on the Settlement Website. *See* Kimball

23   Decl., ¶ 17. The last day to object or opt-out of the Settlement is April 30, 2024.

24   To date, there have been no opt-outs or objections to the Settlement. *See* Blood

25   Final Approval Decl., ¶ 26; *see also* Kimball Decl., ¶¶ 20, 21. As described

26   above, based on a preliminary analysis, Claims representing most of the Tokens

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 11

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00171603

BLOOD HURST & O' REARDON, LLP

1   held as of November 19, 2018, have been submitted. *See* Kimball Decl., ¶ 22.

2   The deadline to submit claims is April 15, 2024.

3   The lack of objections or opt-outs and the high claims rate indicates a

4   positive reaction to the Settlement. *See, e.g.*, *In re Mego*, 213 F.3d at 459 (where

5   just a "handful objected, "[t]he reaction of the class members to the proposed

6   settlement further support the conclusion that…the Settlement was fair, adequate

7   and reasonable"); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th

8   Cir. 2004)(affirming approval of a class action settlement where forty-five

9   objections were received out of 90,000 notices); *In re Omnivision*, 559 F.Supp.2d

10  at 1042 ("objections from only 3 out of 5,630 Class Members who received the

11  notice" shows the class favors the settlement); *Garner v. State Farm Mut. Auto.*

12  *Ins. Co.*, No. CV 08 1356 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *40

13  (N.D. Cal. Apr. 22, 2010) ("only 101 out of the over 23,000 who received notice

14  have elected to opt out of the Settlement Class…which is a further indication of

15  the fairness of the Settlement."); *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No.

16  CV 12-2171 FMO (FFMx), 2017 U.S. Dist. LEXIS 77576, at * 25 (C.D. Cal.

17  May 21, 2017)(22 objections out of 2.6 million noticed class members found to

18  be "extremely low"). By any standard, the lack of objection of the Class

19  Members here favors approval of the Settlement. *Id.*

20  Any objections that may be submitted will be addressed after the close of

21  the opt out and objection period in Plaintiff's reply brief.

22  **VII. PLAINTIFF'S FEE AND EXPENSE REQUEST SHOULD BE**
23  **APPROVED**

24  Plaintiff seeks an award of attorneys' fees equal to 25% of the Common

25  Fund, plus reimbursement of expenses of $9,760.65 in expenses incurred to date.

26

BLOOD HURST & O' REARDON, LLP

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 12

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00171603

BLOOD HURST & O' REARDON, LLP

1  In common fund settlements like this one, the Ninth Circuit approves the
2  "percentage of recovery" method. *In re Hyundai & Kia Fuel Econ. Litig.*, 926
3  F.3d 539, 570 (9th Cir. 2019); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029
4  (9th Cir. 1998); *See also Hall v. L-3 Communs. Corp.*, 2019 U.S. Dist. LEXIS
5  137490, at *12 (E.D. Wash. Jan. 25, 2019). In diversity cases, state law typically
6  governs the method for calculating attorneys' fees. *Jordan v. Nationtar Mortg.*
7  *LLC*, 2019 U.S. Dist. LEXIS 74833, at *21 (E.D. Wash. May 2, 2019); citing
8  *Mangold v. California Pub. Utilities Comm'n*, 67 F.2d 1470, 1478 (9th Cir.
9  1995). Under Washington law, the percentage-of-the-fund method is used to
10 calculate class action attorneys' fees in common fund cases. *Vizcano v. Microsoft*
11 *Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Bowles v. Dep't of Ret. Sys.*, 121
12 Wn. 2d 52, 72, 847 P.2d 440, 451 (1993)(holding that in a common fund case,
13 "the size of the recovery constitutes a suitable measure of the attorneys'
14 performance").

15 The requested fee award is less than the lodestar incurred by Plaintiff's
16 Counsel, further indicating that the fee request is reasonable. *See* Blood Final
17 Approval Decl. ¶ 24.

18 **A.    A Benchmark Fee Award of 25% of the Common Fund Is Fair**
19 **and Reasonable**

20 The requested fees are reasonable under the percentage of recovery
21 method of fee calculation. Under the percentage method, "the court simply
22 awards the attorneys a percentage of the fund sufficient to provide class counsel
23 with a reasonable fee." *Hanlon*, 150 F.3d at 1029. In the Ninth Circuit, a fee of
24 25% of a common fund is a presumptively reasonable. *Id.*; *Six (6) Mexican*
25 *Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (the Ninth
26 Circuit has "established 25 percent of the fund as the 'benchmark' award that

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 13

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00171603

should be given in common fund cases"); *Buckingham v. Bank of Am.*, No. 3:15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243, at *13-14 (N.D. Cal. July 11, 2017) (citing *Bluetooth*, 654 F.3d at 942); *Alvarez v. Farmers Ins. Exch.*, No. 3:14-cv-00574-WHO, 2017 U.S. Dist. LEXIS 119128, at *6 (N.D. Cal. Jan. 17, 2017) ("In the Ninth Circuit, attorneys' fees constituting 25% of a common fund are considered presumptively reasonable."). However, "the 25% benchmark can be adjusted upward or downward, depending on the circumstances." *Hyundai*, 926 F.3d at 570. In the state of Washington, the benchmark for an attorney fee award in a common fund settlement is 25% of the fund. *Spencer v. Fedex Ground Package Syst.*, 2016 LEXIS 12083, at * 4 (Wash. Super. Ct. December 2, 2016); citing *Bowles* 847 P.2d 440, 451

In determining whether the percentage requested is fair and reasonable, courts may consider a range of factors, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work; and (5) the contingent nature of the fee and the financial burden. *Vizcaino*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also Laffitte*, 1 Cal. 5th at 504 (same). Based on these factors, the Ninth Circuit has affirmed fee awards "far greater" than 25%. *Hyundai*, 926 F.3d at 571 (citing *Vizcaino*, 290 F.3d at 1047-48 (affirming fees totaling 28% of class recovery) and *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% of class recovery)). In fact, "[a]s a court in this District recognized, 'in most common fund cases, the award exceeds the [25%] benchmark.'" *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108, at *5 (N.D. Cal. Dec. 6, 2017) (quoting *De Mira v. Heartland Emp't Serv.*, No. 12-CV-04092 LHK, 2014 U.S. Dist. LEXIS 33685, at *2 (N.D. Cal. Mar. 13, 2014)); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee

BLOOD HURST & O' REARDON, LLP

1    award of 33 1/3% of fund); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663, 664 (9th

2    Cir. 2003) (affirming fee award of 33% of fund); *Vedachalam v. Tata*

3    *Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2013 U.S. Dist. LEXIS 100796

4    (N.D. Cal. July 18, 2013) (collecting cases awarding 30% or more); *Johnson v.*

5    *Gen. Mills, Inc.*, No. SACV 10-00061-CJC(ANx), 2013 U.S. Dist. LEXIS

6    90338, at \*18-20 (C.D. Cal. June 17, 2013) (approving fee award of 30% of

7    fund); *Milburn v. PetSmart, Inc.*, No. 1:18-cv-00535-DAD-SKO, 2019 U.S. Dist.

8    LEXIS 187530, at \*29 (E.D. Cal. Oct. 29, 2019) (awarding 33.3% of fund).

9        Here, Class Counsel requests a benchmark fee award of 25% of the

10   Common Fund. Given the applicable factors, this request is reasonable.

11          **1.    Plaintiff's Counsel Achieved an Excellent Result for the**

12          **Class**

13       In determining the reasonableness of a fee request, the "most critical factor

14   is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436

15   (1983), *see also Whitehead v. Colvin*, No. C15-5143 RSM, 2016 U.S. Dist.

16   LEXIS 51085, at \*5 (W.D. Wash. Apr. 14, 2016).

17       Here, the settlement achieves Plaintiff's primary goal of providing

18   monetary damages to Class Members for the alleged violations of the WCPA, the

19   WEARA, as well as the breach allegations. As to monetary damages, Claimants

20   will receive cash payments representing about 30% to 150% of their loss,

21   depending on the claims rate and whether Plaintiffs' or Defendants' damage

22   calculation is assumed or interpretation of the escrow agreement. *See* Blood Final

23   Approval Decl., ¶ 25.

24       The results strongly support the fees and costs requested by Class Counsel.

25

26

BLOOD HURST & O' REARDON, LLP

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00171603

**2.      Plaintiff's Counsel Assumed Significant Risks in This Complex Litigation**

The risk, expense, and complexity of the Action also supports the reasonableness of the fee award.

The consideration of significant risks assumed by Class Counsel is discussed above in Section VI.C. Based on the substantial risk incurred, the requested fee award is very reasonable.

**3.      Counsel Provided High-Quality Work**

Class Counsel are experienced in complex litigation and have substantial experience prosecuting consumer class actions. *See* Blood Preliminary Approval Decl. ¶ 31 and Ex. 1 thereto. Class Counsel have a thorough understanding of the issues presented in by this type of case and through their skill and reputation, were able to obtain a settlement that provides an excellent outcome for the Class.

Litigating this case has been challenging. Counsel conducted a detailed investigation and obtained discovery about the escrow, the sale of the Tokens, and the construction of the cryptocurrency mining facilities. *See* Blood Preliminary Approval Decl., ¶ 14. For months, Counsel worked closely with Judge Hursh to reach a settlement, which involved lengthy briefing, a full day mediation, and many phone calls. *Id.*, ¶ 20.

Counsel not only had to concern itself with opposing counsel, but the Trustee in the Giga Watt bankruptcy, as well. *See* Blood Preliminary Approval Decl., ¶¶ 7, 22. Counsel carefully navigated both attempts to bring the Class claims to bankruptcy court and attempts to halt the instant litigation altogether. *Id.*, ¶¶ 7-13. Counsel fought this battle for the Class on multiple fronts and in doing so, helped bring both matters to their eventual settlements.

BLOOD HURST & O' REARDON, LLP

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00171603

BLOOD HURST & O' REARDON, LLP

1    The skill and tenacity of Plaintiff's Counsel was put to the test throughout

2    this litigation, but it resulted in an excellent Settlement for the Class and justifies

3    the requested attorneys' fee award.

4    **4.    Plaintiff's Counsel Took the Case on a Contingency Basis**

5    "[W]hen counsel takes cases on a contingency fee basis, and litigation is

6    protracted, the risk of non-payment after years of litigation justifies a significant

7    fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal.

8    2015)." "It is an established practice in the private legal [world] to reward

9    attorneys for taking the risk of non-payment by paying them a premium over

10   their normal hourly rates for winning contingency cases." *In re Wash. Pub.*

11   *Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Thus, an

12   attorney whose compensation is dependent on success – who takes a significant

13   risk of no compensation – may receive a fee that "far exceed[s] the market value

14   of the services if rendered on a non-contingent basis." *Id.*; *see also Monterrubio*

15   *v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 457 (E.D. Cal. 2013) (same); *Ketchum*

16   *v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001) (discussing and approving "[t]he

17   economic rationale for fee enhancement in contingency cases"). Plaintiff's

18   Counsel undertook the litigation solely on a contingent basis, with no guarantee

19   of recovery. *See* Blood Final Approval Decl., ¶ 5. Despite such a challenge, and

20   through protracted litigation lasting several years, Plaintiff's Counsel was able to

21   demonstrate to Defendants that it faced significant exposure such that it entered

22   into this settlement agreement.

23   **5.    No Members Have Objected to the Requested Fees**

24   "[T]he existence or absence of objectors to the requested attorneys' fee is a

25   factor in determining the appropriate fee award." *Bellinghausen*, 206 F.R.D. at

26   261; *See also In re Northwest Biotherapeutics Inc. Sec. Litig.,* No. 07 Civ. 1254,

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 17

Western Washington Law Group PLLC
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296, ext. 4

00171603

2009 U.S. Dist. LEXIS 138300, at *3 (W.D. Wash. July 10, 2009) (A positive reaction from the Class supports requested fee from the common fund.). To date, no one has objected to the Requested fees. *See* Blood Final Approval Decl., ¶ 26.

## B.    A Lodestar Cross Check Confirms the Fee Request Is Reasonable

Courts often employ a lodestar cross-check to confirm the reasonableness of a percentage-based fee. *See Vizcaino*, 290 F.3d at 1050 (lodestar method "provides a check on the reasonableness of the percentage award"). In conducting this lodestar cross-check, courts compare the requested fee to class counsel's lodestar, and courts regularly approve fee awards that are several times class counsel's lodestar. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (3.65x "within the range of multipliers applied in common fund cases"); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (6.85x "well within the range" of permissible multipliers); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14 Civ. 2541, 2017 U.S. Dist. LEXIS 201108, at *3 (N.D. Cal. Dec. 6, 2017) (3.66x was reasonable); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07 Civ. 05923, 2015 U.S. Dist. LEXIS 67298, at *23 (N.D. Cal. May 21, 2015) (approving "multiplier of 5.5" based on results achieved, quality of work, and delayed payment).

Here, the Plaintiff's Counsel's lodestar is greater than the requested fee award. *See* Blood Final Approval Decl., ¶¶ 16, 24; McGlothin Decl., ¶ 28. This further demonstrates the reasonableness of the requested fee award.

## C.    Plaintiff's Counsel's Expenses Are Reasonable and Compensable

"Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the

BLOOD HURST & O' REARDON, LLP

1    fund so long as the submitted expenses are reasonable, necessary and directly

2    related to the prosecution of the action." *In re Optical Disk Drive Prods.*

3    *Antitrust Litig.*, No. 10 Civ. 2143, 2016 U.S. Dist. LEXIS 175515, at *63 (N.D.

4    Cal. Dec. 19, 2016) (citing *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769

5    (9th Cir. 1977)); *see also Syed v. M-I, L.L.C.*, No. 12 Civ. 01718, 2017 U.S. Dist.

6    LEXIS 118064, at *23 (E.D. Cal. July 26, 2017).

7        The types of reasonable litigation costs "can include reimbursements for:

8    "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone,

9    and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal

10   research; (7) class action notices; (8) experts, consultants, and investigators; and

11   (9) mediation fees." *Syed*, 2017 LEXIS 118064, at *23 (citation omitted); *see

12   also Destefano v. Zynga, Inc.*, No. 12 Civ. 04007, 2016 U.S. Dist. LEXIS 17196,

13   at *73 (N.D. Cal. Feb. 11, 2016). In addition, the Settlement authorizes the Court

14   to award costs to Class Counsel. Settlement § VIII.B.

15       To date, Class Counsel collectively have incurred $9,760.65 in litigation

16   costs and expenses. *See* Blood Final Approval Decl., ¶ 23; *see also* McGlothin

17   Decl., ¶ 32. These costs include payments for filing fees, travel and lodging

18   related to the mediation, legal research, electronic document management,

19   transcripts, telephone conference calls, and other reasonable litigation related

20   costs. *See* Blood Final Approval Decl., ¶ 22. All these costs were necessary to

21   prosecute this action and were incurred for the benefit of the Class. *Id.*, ¶ 20;

22   McGlothin Decl., ¶ 32. Thus, the Court should award Class Counsel $9,760.65 in

23   litigation expenses.

24

25

26

BLOOD HURST & O' REARDON, LLP

### D.   The Requested Class Representative Service (or Incentive) Award Should Be Approved

"Incentive awards are fairly common in class action cases." *Hill v. Garda CL Northwest, Inc.*, No. 09-2-07360, 2015 LEXIS 179, at *26 [Wash. Super. Ct. December 10, 2015]; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing *Newberg on Class Actions* § 11:38 (4th ed. 2008)); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 U.S. Dist. LEXIS 145214, at *42 (N.D. Cal. June 26, 2017) ("Service awards for class representatives are provided to encourage individuals to undertake the responsibilities of representing the class and to recognize the time and effort spent on the case."). Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Class Counsel respectfully request that the Court approve the service award of $5,000 to Class Representative Eric Blomquist. Mr. Blomquist has devoted time and effort to this case, including providing Class Counsel with all necessary information upon request, reviewed of the Settlement, and stayed informed of the status of litigation and settlement discussion. Most importantly, he was willing to step forward to represent the Class despite a history by the

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1  Trustee of repeatedly attacking and seeking sanctions (unsuccessfully) against

2  the previous class representative. *See* Blood Final Approval Decl., ¶ 4; *see also*

3  Declaration of Eric Blomquist in Support of Application For a Service Award

4  ("Blomquist Declaration"), ¶¶ 5-7.

5      The requested service award falls squarely in line with amounts awarded

6  in comparable cases. *See*, *e.g.*, *China Agritech*, 138 S. Ct. at 1811 n.7 (service

7  award of up to $25,000); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,

8  943 (9th Cir. 2015) (affirming $5,000 award); *Galeener v. Source Refrigeration*

9  *& HVAC, Inc.*, No. 3:13-cv-04960-VC, 2015 U.S. Dist. LEXIS 193096, at *7-8

10  (N.D. Cal. Aug. 21, 2015) (collecting cases that service awards of $27,000,

11  $25,000, $15,000, and $2,000 were "fair and reasonable"); *Benson v.*

12  *Doubledown Interactive, LLC*, No. 18-cv-0525-RSL, 2023 U.S. Dist. LEXIS

13  97758, at *9 (W.D. Wash. June 1, 2023) (service awards of $7,500 were fair and

14  reasonable); *Morris v. Fpi Mgmt.*, No. 2:19-CV-0128-TOR, 2022 U.S. Dist.

15  LEXIS 137522, at *20 (E.D. Wash. Feb. 3, 2022) ($10,000 service award).

16  **VIII. CONCLUSION**

17      For all the foregoing reasons, Plaintiff respectfully requests that the Court

18  confirm certification of the Class, grant final approval of the Settlement, and

19  approve Class Counsel's request for attorneys' fees and expenses and service

20  award for the Class Representative.

21                              Respectfully submitted,

22  Dated: April 9, 2024        WESTERN WASHINGTON LAW
                                   GROUP PLLC
23                              DENNIS J. MCGLOTHIN (#28177)
                                ROBERT J. CADRANELL (41773)

24

25                              By:    *s/ Dennis J. McGlothin*
                                    DENNIS J. MCGLOTHIN

26                              P.O. Box 468

---

00171603

1  Snohomish, WA  98291
   Tel: 425/728-7296, ext. 4
2  dennis@westwalaw.com
   robert@westwalaw.com
3  docs@westwalaw.com

4  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (*pro hac vice*)
5  THOMAS J. O'REARDON II
      (*pro hac vice*)
6  PAULA R. BROWN (254142)
   501 West Broadway, Suite 1490
7  San Diego, CA  92101
   Tel: 619/338-1100
8  619/338-1101 (fax)
   tblood@bholaw.com
9  toreardon@bholaw.com
   pbrown@bholaw.com

10  *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 22

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA  98291
(425) 728-7296, ext. 4

00171603

BLOOD HURST & O' REARDON, LLP